(779 P.2d 37)

No. 62,691

STATE OF KANSAS, *Appellee*, v. DALE SAEGER, *Appellant*.

Opinion filed September 8, 1989.

*Reid T. Nelson*, special appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Phillip A. Burdick*, county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before ABBOTT, C.J., BRISCOE and DAVIS, JJ.

BRISCOE, J.: Defendant Dale Saeger appeals his conviction on nine counts of forgery (K.S.A. 21-3710), alleging the trial court erred in denying his request to discharge his court-appointed attorney and in admitting evidence of prior convictions. We affirm.

### I. Request to discharge court-appointed attorney

As a general rule, it is within the discretion of the trial court to determine whether dissatisfaction of an indigent defendant with court-appointed counsel warrants discharge of that counsel. If there is a reasonable basis for believing the attorney-client

relationship has not deteriorated to a point where appointed counsel can no longer give effective aid, the trial court is justified in refusing to appoint new counsel. *State v. Banks,* 216 Kan. 390, 393-94, 532 P.2d 1058 (1975). On appeal, our scope of review is limited to whether the trial court abused its discretion. In making that determination, we must decide whether any reasonable person would agree with the trial court's ruling. If we can reach that conclusion, we will not disturb the trial court's decision. *Hoffman v. Haug,* 242 Kan. 867, 873, 752 P.2d 124 (1988).

Defendant alleges he disagreed with his court-appointed counsel over the use of a KBI report on handwriting analysis. Strategic decisions are within the exclusive province of the attorney after consultation with the defendant. *State v. Banks,* 216 Kan. at 395. As his counsel relented to defendant's demands and the report was offered and admitted as evidence, this disagreement cannot serve as a basis for reversing the trial court's decision not to discharge counsel.

Defendant also alleges his counsel may have betrayed confidential information to the State. He alleges counsel "pumped" him for information and turned that information over to the State. He claims this demonstrates good cause to discharge counsel. Defendant never revealed what the information was and later admitted the conversation had nothing to do with his case. He did state the information was in regard to another person's drug case and was totally unrelated to his forgery charges. No evidence was presented to the trial court to corroborate the charge of breach of confidence, and the court determined that, even if the conversation did occur, it did not prejudice defendant's case in any way.

In *United States v. Gallop,* 838 F.2d 105, 108 (4th Cir. 1988), the court set out the factors an appellate court should consider in determining whether the trial court abused its discretion in denying defendant's motion to discharge a court-appointed attorney: timeliness of the motion, adequacy of the trial court's inquiry into defendant's complaint, and whether the attorney-client conflict was so great that it resulted in total lack of communication preventing an adequate defense. The court reasoned that the right to counsel of defendant's choosing is not absolute and it is within the discretion of the trial court, after also considering the State's countervailing interest in proceeding on

schedule, whether to discharge the attorney. See *Gallop*, 838 F.2d at 108.

Defendant's request to discharge his counsel occurred on the morning of trial. Although defendant states that he notified the court of problems on previous occasions, our search of the record does not disclose any previous requests by defendant to discharge counsel. In *United States v. Mastroianni*, 749 F.2d 900 (1st Cir. 1984), the court held there was no abuse of discretion in denying a motion to appoint new counsel four days before trial. Given the lateness of defendant's request in the present case, a newly appointed counsel would have had inadequate time to prepare. The timing of defendant's request supports the trial court's ruling. The trial court did not abuse its discretion in concluding the trial should proceed as scheduled.

The second factor to be considered under *Gallop* is the adequacy of the court's inquiry into defendant's complaint. The issue of the admission of the KBI reports regarding handwriting analysis was disposed of by stipulation. As regards the allegation of breach of confidence, the trial court gave defendant an opportunity to be more specific and to substantiate the claim. Defendant stated his counsel had asked him about a third person and three days later that person was arrested on a drug charge. When defendant was unable to provide any evidence to substantiate his complaint against counsel, the trial court asked defendant whether the alleged communication had anything to do with the present charges and defendant admitted it did not. The trial court concluded any conversations between counsel and defendant had not prejudiced defendant and, as a defense attorney, counsel needed to ask defendant questions in order to gather all possible information that might be helpful in his defense. The trial court asked defendant if it was his desire to proceed with the jury trial and defendant said: "Yes, sir."

Relying on *United States v. Young*, 482 F.2d 993 (5th Cir. 1973), defendant contends it is reversible error for the trial court not to thoroughly inquire into any allegations of conflict. He argues the trial court's investigation into the allegations was inadequate because the court failed to question defendant's counsel or the prosecutor. In *Young*, the court stated it is a violation of the Sixth Amendment if the trial court refuses to inquire into a substantial complaint when there is no reason to

suspect the bona fides of the defendant. 482 F.2d at 995. In the absence of conflict presenting a Sixth Amendment violation, the scope of the trial court's inquiry is within the court's discretion.

Here, defendant was unable or unwilling to substantiate his claim of breach of confidence. Assuming the allegation is correct, the conversation was never brought out in the trial and did not prejudice defendant. The claim was insubstantial, and defendant received effective representation at trial.

The third factor under *Gallop* is whether the conflict is so great that there is a total lack of communication, preventing an adequate defense. The record demonstrates no irreconcilable conflict between defendant and his counsel or any breakdown of communication between them. There is no contention that defendant refused to consult with counsel, and, in fact, defendant stated he was ready to proceed to trial after the trial court refused his request to discharge counsel. In *State v. Banks*, 216 Kan. at 395, the Supreme Court stated the indigent defendant must show the representation was ineffective in order to substitute appointed counsel. A review of the record indicates that counsel's representation of defendant was adequate under Sixth Amendment standards.

Relying on *Wilson v. Mintzes*, 761 F.2d 275 (6th Cir. 1985), defendant contends requiring a showing of prejudice before granting the request to substitute counsel violates the equal protection clause of the Fourteenth Amendment because no showing of prejudice is required to contest a refusal to substitute retained counsel. *Wilson* does require the accused to show *good cause* such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney. 761 F.2d at 280. These points are indistinguishable from the factors set out in *Gallop*. Like *Wilson*, *Gallop* requires a showing of good cause, not prejudice. Defendant has not demonstrated good cause for his request to substitute counsel under either *Wilson* or *Gallop*.

Defendant contends there was a showing of prejudice because his counsel stated a conflict had arisen between them. He cites *Holloway v. Arkansas*, 435 U.S. 475, 485, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978), for the proposition that any time counsel confesses a conflict of interest, substitute counsel should be appointed. *Holloway* dealt with conflicts arising out of multiple

representation by one attorney. Here, counsel did state there were conflicts regarding trial strategy. However, there was no breakdown of communication and they were able to reconcile their differences prior to trial. Counsel's statement, when considered in context, does not establish prejudice to defendant.

## II. Admission of evidence of prior crimes

K.S.A. 60-455 provides that evidence of a defendant's prior convictions is not admissible to infer that defendant committed another crime, but can be used "to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." In determining the admissibility of prior convictions under 60-455, the trial court must determine it is relevant to prove a material fact which is in dispute, and the court must balance the probative value of the prior conviction against its tendency to prejudice the jury. The admissibility of prior convictions pursuant to 60-455 is within the trial court's discretion and will not be reversed unless that discretion is abused. *State v. Nunn*, 244 Kan. 207, 210-11, 768 P.2d 268 (1989). Judicial discretion is abused when judicial action is "arbitrary, fanciful or unreasonable." *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973).

Defendant had been convicted twice of forging checks drawn on the account of Floyd Merz. In the present case, defendant was again charged with forging checks drawn on Merz's account. Evidence of prior convictions is admissible independent of 60-455 to establish the relationship of the parties and the existence of a continuing course of conduct between the parties. *State v. Mogenson*, 10 Kan. App. 2d 470, 471-72, 701 P.2d 1339, *rev. denied* 238 Kan. 878 (1985). The trial court admitted the evidence because it involved the same victim and the same defendant, holding the facts established a pattern and served to identify and substantiate the plan. The prior convictions were relevant because they showed defendant had the specific intent to commit the forgery against Merz and they established the relationship of the parties.

Defendant admitted the checks were forged but denied writing them. He presented evidence that other people were in the home and had access to the checks, and implied that it must have been someone else who forged the checks. In closing argument, defense counsel alluded to the possibility that someone else may

have forged the checks. Thus, identity was clearly in dispute.

In *State v. Bly,* 215 Kan. 168, 523 P.2d 397 (1974), the court enumerated eleven basic principles to consider regarding the admissibility of evidence pursuant to 60-455. The court held there must be "some evidence of the underlying facts showing the manner in which the other offense was committed so as to raise a reasonable inference that the same person committed both offenses." *Bly,* 215 Kan. at 177. In the present case, the prior forgeries and the present forgeries were committed in the same manner. Checks on Merz's account were made payable to defendant, signed with Merz's name, endorsed in defendant's name, and presented to a third party for money. The admission of the prior convictions served to show defendant's plan in the commission of the forgery, his intent to commit forgery, and his identity as being the one who committed the forgery.

The probative value of the evidence of the prior convictions outweighs any prejudicial effect on defendant. The similarity of the prior convictions with the present charge aided the jury in ascertaining that defendant committed both offenses, that he intended to commit forgery, and that the same plan was used. The trial court also instructed the jury at the close of trial regarding the limited purpose of the evidence. The trial court did not abuse its discretion in permitting evidence of defendant's prior convictions for the limited purpose of proving his plan and identity.

Affirmed.