(965 P.2d 848)

No. 77,458

STATE OF KANSAS, *Appellee*, v. MAURICE MOSLEY, *Appellant*.

Opinion
filed September 25, 1998.

*Debra J. Wilson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Gary D. Stone*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before LEWIS, P.J., PIERRON, J., and REBECCA L. PILSHAW, District Judge, assigned.

PIERRON, J: Maurice Mosley was convicted of one count each of aggravated battery, a severity level 7 person felony, and interference with a witness, a class B person misdemeanor.

At trial, evidence indicated that Mosley had attended a birthday party for his girl friend. William Miller also attended the party. Miller and Mosley had a contentious past. Miller had shot Mosley in 1992, following a disagreement. Mosley testified he was afraid of Miller and was frightened when Miller arrived at the party. Evidence indicated Mosley had approached Miller, pulled out a gun, and beat Miller's head with it. Mosley testified it had been Miller who pulled a gun and he had wrestled it away from Miller and then beat Miller with his fist.

The jury disbelieved Mosley's version of the events and found him guilty of aggravated battery. He was also found guilty of interference with a witness. Mosley appeals his convictions and sentence. We note the jury also found Mosley guilty of criminal possession of a firearm; however, the district court granted Mosley's motion for judgment of acquittal on that charge.

Mosley first argues the trial court erred in failing to inquire into his dissatisfaction with his retained counsel and in failing to allow him to obtain substitute counsel. The standard of review where the trial court denies a defendant's request for new *appointed* counsel is abuse of discretion. *State v. Cromwell*, 253 Kan. 495, 499, 856 P.2d 1299 (1993). In *State v. Kirk*, 208 Kan. 645, 647, 493 P.2d 233 (1972), the court indicated this standard applies also when the defendant's counsel is retained. Thus, the decision to allow a substitution of counsel is a matter left to the trial court's discretion. *Cromwell*, 253 Kan. at 499.

After the State presented its case in chief, Mosley's retained attorney told the trial court that Mosley had some concerns regarding her representation. The nature of those concerns is not apparent from the record. Mosley may have been concerned about his representation in connection with a plea bargain he did not accept. Further, Mosley was concerned about a letter he had written and mailed from the Wyandotte County Detention Center that was introduced at trial. This letter was the basis of the interference

with a witness charge. The exchange between Mosley's attorney and the court occurred as follows:

"MS. JACKSON: In addition, he would, of course, have some concerns with my representation of him. The letter that has been put into evidence that was written around the time of the preliminary hearing, I have explained to him, in my opinion, should not have been written. It was not even in existence at the time that I took the case on. And I do feel that it changed the complexion of the case. I have stated these things because I want them to be on the record so that if and when the time presents itself, I can ask the court reporter to transcribe these particular notes. And I am not certain, Judge, if Mr. Mosley would like to make a statement to you now.

"THE COURT: Well, there's nothing to say, I mean—

"MS. JACKSON: He—

"THE COURT: I mean, once he has an attorney, he is stuck with representation by the attorney.

"MS. JACKSON: Um-hum."

Mosley now argues the district court erred in failing to inquire about the conflict and in assuming no remedy was available to him. On this he is correct. The rules regarding dismissal of appointed counsel have been set out in many cases. This case involves the dismissal of retained counsel. Nevertheless, the framework for analyzing whether the trial court abused its discretion in disallowing a change in appointed counsel will be used here to guide the discussion.

In *State v. Saeger*, 13 Kan. App. 2d 723, 724, 779 P.2d 37 (1989), the Kansas Court of Appeals adopted the analysis set out in *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir.), *cert. denied* 487 U.S. 1211 (1988), which was used to determine whether the trial court abused its discretion in denying a defendant's request for a new court-appointed attorney. The factors an appellate court should evaluate in answering this question are timeliness of the motion to change counsel, adequacy of the trial court's inquiry into the defendant's complaint, and whether the conflict between the attorney and the client was so severe that it resulted in a total lack of communication, preventing an adequate defense. 13 Kan. App. 2d at 724.

Aside from the fact that Mosley never filed a formal motion, his counsel first mentioned a possible conflict in the middle of the

trial. Thus, the motion was probably untimely. In *State v. Kirk*, 208 Kan. at 646-47, the court briefly discussed a situation where the defendant, in the middle of trial, asked to have his retained counsel dismissed so he could hire another.

"We glean from the record that while Mr. Kirk was on the witness stand he asked for the dismissal of his attorney and the appointment of another counsel, stating he had been led to believe his case was not going to be brought to trial. Apparently this request was denied by the court. This was proper we believe, for trial was in progress.

"We cannot quarrel with the defendant's general assertion that for good cause shown an accused should be permitted to secure new counsel when he no longer has faith in the old. However, the time for a change of horses is hardly while the wagon is resting in midstream. At this point in any trial, a court must exercise its best judgment under all the circumstances, and this we believe was done." 208 Kan at 646-47.

Mosley also argues the trial court erred in failing to inquire about the conflict and that such an error violates his Sixth Amendment right to effective assistance of counsel. The extent of the inquiry that is necessary has not been fully addressed in Kansas. However, one case involving appointed counsel has discussed the question.

In *State v. Richardson*, 256 Kan. 69, 82, 883 P.2d 1107 (1994), Richardson argued the trial court's inquiry into the conflict between him and his appointed counsel was insufficient. The court acknowledged that guidance from case law regarding the type of inquiry necessary was lacking. Ultimately, the court decided the trial court did not abuse its discretion in failing to appoint new counsel. In reaching its decision, the court noted that defense counsel first told the trial court about the conflict. The trial court then asked defendant to explain why he was unsatisfied with his counsel. The trial court found defendant's dissatisfaction was baseless and explained its finding. Finally, the trial court gave defendant and his counsel time to try to come to an understanding so the attorney-client relationship could be maintained.

The problem here is that the trial court never allowed Mosley an opportunity to explain his perception of the conflict. The United States Supreme Court has indicated that where the trial court becomes aware of a possible conflict of interest between an attorney and client, the court must inquire. *Wood v. Georgia*, 450 U.S. 261,

272, 67 L. Ed. 2d 220, 101 S. Ct. 1097 (1981). The *Wood* court explained:

"[T]he record does demonstrate that the *possibility* of a conflict of interest was sufficiently apparent at the time of the . . . hearing to impose upon the court a duty to inquire further. . . . Any doubt as to whether the court should have been aware of the problem is dispelled by the fact that the State raised the conflict problem explicitly and requested that the court look into it." 450 U.S. at 272-73.

The *Wood* court also characterized an earlier decision, *Cuyler v. Sullivan*, 446 U.S. 335, 347, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980), as "mandat[ing] a reversal when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists.' " 450 U.S. at 272, n.18. Thus, it is an abuse of discretion where a trial judge, after becoming aware of a potential conflict between an attorney and client, fails to inquire further.

The final factor we must consider is whether the conflict between the attorney and the client was so severe that it resulted in a total lack of communication, preventing an adequate defense. However, this factor is impossible to evaluate because Mosley's description of the conflict is vague. Mosley was not permitted to offer a description of the conflict at trial and has not done so subsequently.

The conflict between Mosley and his attorney was not brought to the attention of the trial judge until the State rested its case. At that point, there is little chance any defendant would be permitted to secure the assistance of a new attorney. However, unless there is no chance a defendant would be allowed to do so, the trial court abused its discretion in failing to inquire further into the nature of the conflict after becoming aware of its existence.

At this time, though, there is no evidence in the record, or even a clear allegation by Mosley, as to the nature and extent of the supposed conflict. While the trial court was clearly wrong in saying Mosley was unalterably "stuck" with his trial counsel, we cannot assume there was a serious enough problem that would have required the substitution of counsel. This is particularly true of the point in time the vague complaint was made. We also note no proffer was presented to the court concerning the alleged com-

munication breakdown. Neither was there any other procedural effort made to preserve the factual basis of Mosley's complaint.

Mosley is not without a remedy even though this issue cannot now be addressed on direct appeal. He still has the avenue of a proceeding under K.S.A. 60-1507, assuming there are facts to support it.

Mosley next argues the State made three improper comments during closing arguments.

"In Kansas, the general rules pertaining to prosecutorial misconduct are clear:
 'Improper remarks made in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and deny him a fair trial. [Citation omitted.] The prosecutor is entitled to considerable latitude in arguing the case to a jury. There is no prejudicial error where the questionable statements of a prosecuting attorney are provoked and made in response to previous arguments or statements of defense counsel. [Citation omitted.] Since Kansas does not follow the "plain error" rule used in federal courts, reversible error cannot be predicated upon a complaint of misconduct of counsel during closing argument where no contemporaneous objection is lodged. [Citation omitted.] Remarks made by the prosecutor in closing argument are harmless error if the court finds that the error had little likelihood of changing the result of the trial.'
*State v. Baker*, 249 Kan. 431, 446, 819 P.2d 1173 (1991)." *State v. Sexton*, 256 Kan. 344, 362-63, 886 P.2d 811 (1994).

The three comments made by the prosecutor and now objected to by Mosley are:

"Well, the fact of the matter is, ladies and gentlemen, my witnesses were telling the truth, okay?"

"Ladies and gentlemen of the jury, the title of this case isn't *State vs. William Miller*. It's *State vs. Maurice Mosley*, and don't let the defendant confuse you about who's on trial. And that's his whole game anyway, ladies and gentlemen, is to confuse you about the evidence, okay?"

"And they want you to focus on, again, the inconsistencies in the statements, but I guarantee you, ladies and gentlemen, if my witnesses would have come up here and had the exact same story, they would have yelled conspiracy, okay?"

No contemporaneous objection was made following any of these statements. It has been repeatedly held that " 'reversible error cannot be predicated upon a complaint of misconduct of counsel during argument where no contemporaneous objection is lodged.' "

256 Kan. at 363 (quoting *State v. Bird*, 238 Kan. 160, 179, 708 P.2d 946 [1985]).

We also believe that the comments, although perilously close, were not so egregious as to require a reversal.

We wish to remind trial advocates that final argument is a crucial and delicate time of the trial. It is extremely dangerous to allow zealousness to be given too loose a rein. Fair comment on trial tactics and the interpretation of evidence is appropriate in argument to the jury. But, care must be exercised not to inappropriately denigrate opposing counsel or inject personal evaluations of the honesty of witnesses.

Mosley finally contends the trial court erred in accepting his proposed criminal history. The following exchange occurred at Mosley's sentencing:

"THE COURT: Sir, have you talked to your lawyer about your criminal history?

"MR. MOSLEY: No, I didn't get a chance to talk to her. I just—

"THE COURT: Well, is it true, sir, you have at least three or more person felonies that I have to consider?

"MR. MOSLEY: That's what I was—I was asking them about. I am just now getting a chance to talk to her on any of this stuff. I don't even recall having no three person felonies. Only thing I went to prison for the attempted rape and my failure to appear. I didn't make the court in time, so I got aggravated failure to appear. Then on this other—on this other one is this new charge and on here— it's on there. They got stuff on there that I don't recall any of it—having any of it.

"THE COURT: Sir, did you get convicted of a robbery in juvenile court back in 1980?

"MR. MOSLEY: I was with some guys in the car. They got—they got charged with that. I had to go to court behind—

"MS. JACKSON: I recall, Judge—I represented Mr. Mosley back in 1980 and that is correct. He doesn't recall, but—

"MR. MOSLEY: No, I recall that.

"MS. JACKSON: —that is accurate.

"THE COURT: Well, let me back up for the State. According to this criminal history, there is one person felony— let me see. We've got the burglary now. What about the burglary? We haven't talked about that. Then, sir, it looks like you were charged with a—with a burglary in Wyandotte County. Do you want me to pull the file for you?

"MR. MOSLEY: When was that at?

"MS. JACKSON: Judge, I have just confirmed—that's the one I have just reminded you of your co-defendants in that case.

"MR. MOSLEY: Oh, yeah.

"MS. JACKSON: He didn't recall, but your memory has been refreshed. You do remember, Mr.—

"MR. MOSLEY: That's—

"MS. JACKSON: Anthony Frasier, Mr. Jackson, and Mr. Stallings, the court—defendants in that case?

"MR. MOSLEY: That's when I did my time was '82?

"THE COURT: You did time for burglary and an attempted rape, is that right, sir?

"MR. MOSLEY: Yes, ma'am, that's all I had. I done my time for that.

"THE COURT: Okay, sir, I understand you did time, but for purposes of my sentencing today, we categorize your criminal history and it's extensive whether it's misdemeanors or person felonies or non-person felonies. And, sir, you are in the worst criminal history category there is. You would be considered probably—you know, like I said, it's the worst criminal history you could have in Kansas."

Mosley argues the court erred in determining he had admitted his criminal history, and instead should have conducted a hearing to establish his criminal history. This issue involves interpretation of the Kansas Sentencing Guidelines Act (KSGA). Interpretation of the KSGA is a question of law and the appellate court's scope of review is unlimited. *State v. Miller*, 260 Kan. 892, 895, 926 P.2d 652 (1996).

K.S.A. 21-4715 sets out the procedure for proving a defendant's criminal history when the defendant objects to the proposed criminal history. K.S.A. 21-4715 states:

"(a) The offender's criminal history shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge.

"(b) Except to the extent disputed in accordance with subsection (c), the summary of the offender's criminal history prepared for the court by the state shall satisfy the state's burden of proof regarding an offender's criminal history.

"(c) Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet. The state shall have the burden of producing further evidence to satisfy its burden of proof regarding any disputed part, or parts, of the criminal history and the sentencing judge shall allow the state reasonable time to produce such evidence to establish the disputed portion of the criminal history by a preponderance of the evidence."

Pursuant to subsection (c), Mosley was required to make written objection to his proposed criminal history if he wished to challenge

it. However, the presentence investigation (PSI) report shows it was submitted on April 9, 1996. The sentencing hearing was held on April 10, 1996. Therefore, Mosley probably did not receive the PSI report in time to make a written objection to the proposed criminal history. Thus, under these circumstances, his failure to make a written objection should not preclude him from challenging his criminal history.

The question then becomes whether the court erred in determining that Mosley admitted his criminal history when he had initially objected to the criminal history. Mosley argues it was improper for his counsel to essentially admit to his criminal history in light of his objection. He cites *State v. Hankins*, 19 Kan. App. 2d 1036, 1047, 880 P.2d 271 (1994), wherein this court stated:

"K.S.A. 1993 Supp. 21-4715 clearly provides that the State has the burden to prove a defendant's criminal history unless the offender admits his or her criminal history in open court. It is not defense counsel's place to admit to his or her client's prior offenses. It is defense counsel's responsibility to represent the defendant and to hold the State to meeting its burden of proof. Defense counsel has an obligation to protect the defendant's rights and to ensure that the procedures employed in any case comply with due process."

The State argues Mosley, during the sentencing hearing, did admit to the proposed criminal history, and, therefore, his argument should fail. However, the procedure used at sentencing was not appropriate. The PSI report should have been available prior to April 9, 1 day before sentencing. Also, Mosley's attorney should have had the opportunity to discuss the proposed criminal history with Mosley prior to the sentencing hearing.

Nonetheless, during sentencing, Mosley did admit to his criminal history, specifically, his three prior person felonies. K.S.A. 21-4715 provides that if Mosley admitted his criminal history in court, the criminal history as summarized in the PSI report shall satisfy the State's burden of proof. Mosley admitted his criminal history, and therefore the criminal history was proved by the State in accordance with K.S.A. 21-4715, and Mosley cannot prevail on this issue.

We note Mosley does not contend the criminal history is incorrect.

We are aware of the press of work on the trial courts of this state. However, difficult as it might be at times, criminal proceedings must be conducted with a reasonable concern for the rights of criminal defendants. In the present case, it appears there really was no substantive disagreement with the criminal history, once there was time to review and discuss it. But, we must stress that in the rush to deal with ever increasing case loads, we cannot sacrifice the appropriate need for orderly process.

Where the State has the burden to prove criminal history when there is a dispute, requiring the defendant to essentially consult with counsel on the record and at the hearing is inappropriate, although no prejudice might result.

Affirmed.