Lena B. FERGUSON, Petitioner,

v.

David MCKUNE, et al., Respondents.

No. 95–3323–DES.

United States District Court, D. Kansas.

June 8, 1999.

David J. Gottlieb, Lawrence, KS, for petitioner.

Jared S. Maag, Office of Attorney General, Topeka, KS, Kevin C. Fletcher, Sioux City, IA, for respondents.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter comes before the court on petitioner's Motion to Amend or Alter Judgment (Doc. 52), pursuant to Fed. R.Civ.P. 59(e).

## I. PROCEDURAL AND FACTUAL HISTORY

The Report and Recommendation summarized the procedural and factual history of this case as follows:

In November of 1991, Ferguson was convicted of aggravated arson and felony murder of her ex-husband. She was sentenced to a term of 15 years to life

for aggravated arson and a concurrent term of life imprisonment for the felony murder.

Petitioner raised each of the issues presented herein within her direct appeal. Her conviction was affirmed. The facts, as found by the Kansas Supreme Court, are set forth in part below:

At 12:43 p.m. [on January 13, 1991], Ferguson showed up at the Topeka Police Department.... When the officer at the desk asked Ferguson how he could help her, Ferguson responded, "I just killed a man. I set him on fire." He asked her where, and Ferguson said at 3116 SE Dupont. He checked the monitor and verified that a fire had been reported at that address. The desk officer telephoned for the detective on duty, and then he escorted Ferguson to the detective division.

There Officer Mills introduced himself to Ferguson. Ferguson replied in the negative when he asked her if she needed a drink of water, if she needed to use the restroom, and if she needed any medical assistance. Ferguson asked Officer Mills "if he was dead," and Mills told her that Summers was dead. Ferguson said, "Didn't mean to kill him," "Didn't want to," and "I'm tired of this," or "I'm tired of it."

\*     \*     \*     \*     \*     \*

[Ron Wurtz, an attorney with the Public Defender's office, was appointed to represent Ferguson on January 14, 1991.] On March 29, counsel sought a continuance of the trial setting on the ground that Ferguson was unable, due to emotional turmoil, to discuss with counsel "details surrounding the event." On April 16, defense counsel filed a motion seeking permission to withdraw "and further for an order appointing counsel who is not employed by the Public Defender as substitute counsel." Counsel stated in the motion:

"In support of her motion the Accused shows the Court that she has no confidence in her present counsel or in any counsel who is employed by the Public Defender's office. Said conflict and absence of confidence is so serious that the attorney-client relationship is so adversely affected that there is effectively no counsel at all for the accused."

At the hearing on the motion to withdraw, counsel stated that the motion had been filed at Ferguson's request. Counsel stated:

"I have exhausted my ability to resolve and to satisfy Ms. Ferguson that I can effectively represent her. She is voicing the concern that because we are employees of the State, that we have an inherent conflict of interest—and those aren't her words, but that's the import of what she is saying—in representing her as a defendant charged by the State. But, it goes deeper than that, and it's difficult for me, or, in fact, I am unable to enlighten the Court as to what I see as the problem. I don't know. But, Ms. Ferguson, in my opinion, is sincere in her beliefs. I believe that she has been sincere in working with me to try to overcome the reservation she has. She has talked to me. She has not avoided me. She has been willing to discuss issues and problems, but there is something very basic in her feelings right now which leads me to believe that she does not have the confidence in me or my staff to permit her to put on the defense that she has. And I can represent to the Court that in my professional opinion she has a defense in this case which a jury should be allowed to decide."

\*     \*     \*     \*     \*     \*

When asked about reasons why she did not want to be represented by her appointed counsel, Ferguson principally responded that a lawyer who

was paid by the government could not fairly represent her ...

Ferguson also expressed some complaints about trial counsel's handling of her case [each of which was dismissed by the trial court as unfounded].

254 Kan. at 65–67.

Following plaintiff's competency evaluation at Larned State Hospital in October of 1991, the motion to substitute counsel was renewed and denied by the trial court. While the state courts found "little doubt that the breakdown in communication between Ferguson and counsel was absolute," *id.* at 73, they concluded the "appointment of substitute counsel would have been an exercise in futility." *Id.* at 75. The Supreme Court explained:

> The record supports the finding by the District Judge that there was no basis on which to appoint substitute counsel for Ferguson. She refused to cooperate with counsel and caused or substantially contributed to the problems of which she now complains. She cannot now complain of a trial error which was of her own making. We conclude that the conflict was due to her refusal to communicate or cooperate with her counsel; therefore, her right to counsel was not violated.

*Id.* at 76.

After discussing the relevant case law and the arguments of the parties, the magistrate judge concluded that petitioner had not presented certain evidence, which was presented at the evidentiary hearing in this case, to the state courts. As a result, the magistrate judge found that petitioner needs to file a motion for post-conviction relief, pursuant to K.S.A. § 60–1507, in order to present this evidence to the state courts and fully exhaust her state remedies. Therefore, the magistrate judge recommended that petitioner's habeas corpus petition be dismissed without prejudice. This court entered an order accepting and adopting the magistrate's report and recommendation on March 12, 1999.

## II. DISCUSSION

### A. Motion to Amend or Alter Judgment

■ A motion for reconsideration provides the court with an opportunity to correct "manifest errors of law or fact and to review newly discovered evidence." *Dees v. Wilson,* 796 F.Supp. 474, 475 (D.Kan.1992), *aff'd,* 13 F.3d 405 (10th Cir. 1993). A court has discretion whether to grant or deny a motion for reconsideration. *Hancock v. City of Oklahoma City,* 857 F.2d 1394, 1395 (10th Cir.1988). There are three circumstances in which a court may appropriately grant a motion for reconsideration: (1) where the court made a manifest error of fact or law; (2) where there is newly discovered evidence; and (3) where there has been a change in the law. *Renfro v. City of Emporia, Kansas,* 732 F.Supp. 1116, 1117 (D.Kan.1990), *aff'd,* 948 F.2d 1529 (10th Cir.1991).

■ A motion for reconsideration is not to be used as a vehicle for the losing party to rehash arguments previously considered and rejected. *Voelkel v. GMC,* 846 F.Supp. 1482, 1483 (D.Kan.1994), *aff'd,* 43 F.3d 1484 (10th Cir.1994). Indeed, "[a] party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend." *Paramount Pictures Corp. v. Video Broad. Sys., Inc.,* No. 89–1412–C, 1989 WL 159369, at *1 (D.Kan. Dec.15, 1989) (citing *United States v. Carolina Eastern Chem. Co., Inc.,* 639 F.Supp. 1420, 1423 (D.S.C.1986)). Such motions are therefore not appropriate if the movant intends only that the court hear new arguments or supporting facts. *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied,* 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).

■ "The party moving for reconsideration has the 'burden to show that there has been a change of law, that new evidence is

available, or that reconsideration is necessary to correct clear error or prevent manifest injustice.'" *Mackey v. IBP, Inc.*, No. 95–2288–GTV, 1996 WL 417513 at *2 (D.Kan. July 22, 1996) (quoting *Int'l Bhd. of Teamsters, Local 955 v. Sambol Meat Packing Co.*, No. 92–2338–JWL, unpublished op. at 2, 1993 WL 393010 (D.Kan. Sept. 30, 1993)).

■ In this case, petitioner asserts that the rationale contained in the order issued on March 12, 1999, is legally incorrect and that it is so vague as to virtually preclude appellate review. Specifically, petitioner asserts that the court's reasoning was based solely upon the fact that the Kansas Supreme Court's opinion contained no reference to the additional evidence. Therefore, petitioner asserts that the court committed plain error.

In support of her assertions, petitioner cites *Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978), for the proposition that it is plain error for the district court to find that petitioner has not raised a federal constitutional claim before the state courts based solely upon the failure of the state court to address the constitutional claim in its opinion. *Id.* at 333, 98 S.Ct. 597. Although the court feels that this case is distinguishable in that the court stated that certain evidence of the claim had not been submitted to the state court based upon the review of the state court opinion and the report and recommendation, the court finds that the motion to alter or amend judgment should be granted in order to clarify the court's ruling. Therefore, the order issued on March 12, 1999, shall be vacated and replaced by this order.

## B. Report and Recommendation

### 1. Standard of Review

The standard for district court review of a magistrate judge's report and recommendation is contained in Rule 72 of the Federal Rules of Civil Procedure and 28

U.S.C. § 636(b)(1)(C). Rule 72(b) provides, in relevant part, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b). As stated in the rule, the district court must make a *de novo* determination regarding the portions of the report and recommendation to which objections have been filed. *Id.*

In this case, petitioner objected to the recommended outcome that the habeas corpus petition be dismissed without prejudice for failure to exhaust her state remedies. Therefore, the court will respond to her objections on this issue.

### 2. Failure to exhaust

■ In order to obtain habeas corpus relief, the petitioner must show that all of the remedies available in state court have been exhausted. 28 U.S.C. § 2254(b). The exhaustion doctrine requires that the petitioner fairly present her claim to the state courts before a federal court will consider it. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The Tenth Circuit has stated that "[f]air presentation" of a prisoner's claim to the state courts means that the substance of the claim must be raised there. The prisoner's allegations and supporting evidence must offer the state courts "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citing *Picard*, 404 U.S. at 276–77, 92 S.Ct. at 512–13). Therefore, although a habeas petitioner will be allowed to present " 'bits of evidence' " to a federal court that were not

presented to the state court that first considered his claim, evidence that places the claims in a significantly different legal posture must first be presented to the state courts. *Jones v. Hess,* 681 F.2d 688, 694 (10th Cir.1982) (quoting *Nelson v. Moore,* 470 F.2d 1192, 1197 (1st Cir.1972)).

*Demarest v. Price,* 130 F.3d 922, 932 (10th Cir.1997).

■ In this case, there is no question that petitioner raised the issues contained within her habeas corpus petition with the state courts. The question is whether the evidence produced in support of petitioner's federal habeas corpus petition has materially altered the claims that petitioner submitted to the state courts on direct appeal. If so, then this evidence must first be presented to the state courts. *Id.*

■ Petitioner objects to the magistrate judge's finding that petitioner has failed to exhaust her state remedies, claiming that the court's reliance on *Demarest* is misplaced. Specifically, petitioner asserts that *Demarest* is distinguishable from this case because the affidavits presented at the evidentiary hearing were from witnesses who were present at the state level and had presented the substance of their testimony at that time. Therefore, petitioner asserts that she did not present new witnesses or completely new evidence, as was the case in *Demarest.*

Petitioner further argues that she did not materially alter her claims by submitting the supplemental evidence contained in the affidavits. Petitioner maintains that finding that she has failed to exhaust her state remedies by presenting this additional evidence would lead to such a finding in every habeas case where the petitioner sought to introduce additional evidence and would "effectively end the right of the federal courts to receive evidence or hold evidentiary hearings in a habeas claim."

The court must disagree with the petitioner. At the evidentiary hearing held on November 13, 1998, the petitioner presented additional evidence through the testimony of Ronald Wurtz and petitioner. Ronald Wurtz, petitioner's trial attorney, testified that: (1) petitioner was unhappy with his efforts, or lack thereof, to either arrange for her son to be shipped back from Saudi Arabia or to establish a way for her to communicate with her son; (2) petitioner had refused to give him information relating to her relationship with her ex-husband and the events surrounding the fire so that he could not develop a self-defense theory or a defense based upon battered women's syndrome; (3) as a last resort, he yelled at petitioner and called her names in an attempt to shock her into assisting with her defense; however, he believed that actually harmed their relationship; (4) he could not engage in plea negotiations because the relationship was so damaged that she would not give him the authority to do so; and (5) he was ineffective assistance of counsel.

Petitioner also testified at the evidentiary hearing. She stated that she was upset with Ronald Wurtz because he did not share her concerns about her son. She further testified that she did not believe that Wurtz could help her because she thought Wurtz was telling the District Attorney everything that she told him. In addition, she stated that the confrontational tactics used by Wurtz scared her and reminded her of her ex-husband. Finally, she stated that she would not discuss personal details with Wurtz because she did not trust him.

None of this information, other than the fact that petitioner would not discuss the case with Ronald Wurtz, was presented to the trial court or to the Kansas Supreme Court. While petitioner's appellate brief refers to a total breakdown in communication between petitioner and her attorney, it did so only in a general sense. There were no specific allegations, such as those listed above, which would have supported her general claim. Furthermore, the inquiry conducted by the trial court at the

hearing held on April 17, 1991, with regard to the motion to withdraw indicated that the main reason petitioner was unable to trust her trial counsel was because he was paid by the state. Thus, these specific, additional reasons for petitioner's distrust of her attorney were not in the record that was before the Kansas Supreme Court. As a result, the Kansas Supreme Court concluded that petitioner chose to refuse to cooperate with her appointed counsel and affirmed her conviction without the benefit of the evidence which was presented to this court.

Although petitioner attempts to distinguish this case from *Demarest*, the court must conclude that this is precisely the type of situation in which *Demarest* becomes applicable. The court recognizes that *Demarest* involved the introduction of new evidence and testimony from new witnesses at the federal habeas evidentiary hearing. *Demarest*, 130 F.3d at 935–38. However, this case involves a situation much like *Demarest* where petitioner made general allegations in the state court proceedings, and then supported those general allegations with additional testimony during the federal proceedings. *See id.* at 939. *See also id.* at 936 (citing *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir.1983)) ("Where a federal habeas petitioner presents newly discovered evidence or other evidence not before the state courts such as to place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it, the state courts must be given an opportunity to consider the evidence.") Thus, the court agrees with the conclusion of the report and recommendation that petitioner would need to file a motion pursuant to K.S.A. § 60–1507 in order to present this additional evidence and fully exhaust her state court remedies.

Petitioner argues that she would be procedurally barred from pursuing a § 60–1507 motion because she raised the underlying issue on her direct appeal. In support of her contention, petitioner cites *Kirk v. State*, 220 Kan. 278, 552 P.2d 633 (1976), in which the Kansas Supreme Court held that a "proceeding pursuant to 60–1507 may not be utilized as a substitute for a second appeal" where the issues raised in the 60–1507 proceeding were resolved on direct appeal. *Id.*

However, as recognized in the report and recommendation, petitioner may still be able to raise this issue and present her additional evidence through a 60–1507 proceeding. In *State v. Mosley*, the defendant raised on direct appeal the issue that the trial court abused its discretion by refusing to allow him to obtain new counsel. *State v. Mosley*, 25 Kan.App.2d 519, 965 P.2d 848, 850 (1998). Although the Kansas Court of Appeals held that the issue could not be addressed on direct appeal because there was no evidence in the record relating to the nature and extent of the conflict between the defendant and his retained counsel, the Court of Appeals also stated that the defendant still had the option of a 60–1507 proceeding available to him. *Id.* at 852. As a result, the court agrees with the conclusion of the report and recommendation and finds that petitioner has not exhausted her state remedies. *See Demarest*, 130 F.3d at 939 (where new evidence transforms claim into one which is "significantly different and more substantial," petitioner has failed to exhaust state court remedies). Because the court concludes that petitioner has failed to exhaust her state remedies, the court will not address the merits of petitioner's habeas claim.

IT IS THEREFORE BY THE COURT ORDERED that petitioner's Motion to Alter or Amend Judgment (Doc. 52) is granted. The order issued on March 12, 1999, shall be vacated and replaced with this order.

IT IS FURTHER ORDERED that the conclusion of the Report and Recommendation (Doc. 46) is accepted and adopted.

Petitioner's habeas corpus petition (Doc. 2) is dismissed without prejudice.