Martin J. ZIMMER, Petitioner,

v.

David R. McKUNE, Warden, Lansing
Correctional Facility,

and

Carla Stovall, Kansas Attorney
General, Respondents.

No. 99–3328–DES.

United States District Court,
D. Kansas.

Jan. 24, 2000.

Martin Joseph Zimmer, Lansing, KS, petitioner pro se.

Jared S. Maag, Office of Attorney General, Topeka, KS, for David R McKune, Attorney General of Kansas, respondents.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1). Petitioner appeals his convictions of robbery and criminal deprivation of property. Petitioner argues there is insufficient evidence to support his convictions. He also alleges prosecutorial misconduct, erroneous jury instructions, and ineffective assistance of appellate counsel. The court finds that the papers filed by the parties and the state court record are sufficient to resolve this case. For the reasons set forth below, petitioner's application for habeas corpus relief is denied.

### I. BACKGROUND

A jury found Martin J. Zimmer ("Martin") guilty of robbery in violation of Kan. Stat.Ann. § 21–3426 and of criminal deprivation of property in violation of Kan.Stat. Ann. § 21–3705. The trial judge sentenced Martin to a term of forty-four months for robbery and a term of twelve months for criminal deprivation of property to run concurrently.

The victim of both crimes was petitioner's father, Gerald Zimmer ("Gerald"), who ran the Auction Palace, an auction business in Beloit, Kansas. Martin worked numerous jobs, rarely staying at one for more than a few weeks. The history of the father and son demonstrates that Martin routinely demanded money and vehicles from his father, who often supplied them upon demand. In July, Gerald received a collect call from his son, who took a harvesting job in North or South Dakota. Martin had quit his job and demanded that his father give him money so he could get back to Kansas. Gerald refused to send the money.

On July 22, 1994, Martin appeared at the Auction Palace. There were several customers looking at sale items and a secretary in the real estate office. Martin approached his father and said, "I'm going to get you this time." Gerald suggested they go into the Auction office for privacy. Once inside the office, Martin told his father, "You're going to give me $1,000 or I'm going to beat you up and tear this place up." Gerald refused. Martin put him in a headlock and threw him to the floor. Martin did not release Gerald until he agreed to think about giving Martin the money. Once Gerald got up, Martin continued to threaten Gerald with bodily harm if he did not pay Martin $1,000.

Wanting to avoid a fight and destruction to his business, Gerald went out to his truck to get the checkbook. Gerald then gave Martin a check for $1,000. Martin warned his father not to stop payment on the check and left the business. Martin told his father, "I'll be seeing you," and later cashed the check. Gerald testified that at the time he was afraid for his own safety. Gerald did not call the police or report the incident because he was ashamed and did not know what to do. Gerald continued to give Martin money after the July 22 incident.

On September 1, 1994, Martin again returned to the Auction Palace and asked his father for more money. When Gerald refused to give him money, Martin stated he would take Gerald's 1983 Chevrolet truck. When Gerald told Martin not to take the keys or the truck, Martin replied, "I'm going to take it just watch me." Martin took the truck, and Gerald did not get the

truck back until after the police arrested Martin.

On the day Martin took the truck, Gerald contacted Douglas Daugherty ("Daugherty"), Mitchell County sheriff, and Tom Hall ("Hall"), undersheriff, and told them about the truck and $1,000 check. Gerald took the paperwork from the sheriff and filled it out back at his office. In the written report, Gerald neglected to state that petitioner threw him to the ground. However, he told both Daugherty and Hall about the incident. As a result of Gerald's statements and report, Martin was arrested and charged with robbery and criminal deprivation of private property.

On March 21, 1995, a jury found Martin Zimmer guilty of both robbery and criminal deprivation of property. Zimmer appealed, raising the issue of whether there was sufficient evidence to support his convictions. The Kansas Court of Appeals affirmed the conviction. *State v. Zimmer*, 934 P.2d 161 (Kan.App.1997) (unpublished opinion). The Kansas Supreme Court denied review.

Zimmer then filed a Kan.Stat.Ann. § 60–1507 motion, raising the following issues: (1) the prosecutor's portrayal of petitioner as someone who lied under oath resulted in an unfair trial; (2) jury instruction number 7 is unconstitutional because it dilutes the statutory presumption of innocence and diminishes the state's burden of proving guilt beyond a reasonable doubt; (3) jury instructions are clearly erroneous because use of the term "claims made by the state" instead of "elements of the offense" is confusing and fails to make clear the constitutional requirement of the state to prove every element beyond a reasonable doubt; and (4) ineffective assistance of appellate counsel. The state district court denied relief on all claims. The district court found that (1) petitioner could not use a Kan.Stat.Ann. § 60–1507 motion as a substitute for a direct appeal involving mere trial errors; (2) there was no basis for the claims of unconstitutional jury instructions; and (3) appellate counsel pursued the only viable issue on direct appeal.

The Kansas Court of Appeals affirmed the district court's denial of relief. *Zimmer v. State*, 979 P.2d 1272 (Kan.App.1999) (unpublished opinion). The Kansas Supreme Court denied review. On October 8, 1999, Petitioner filed an application for federal habeas relief pursuant to 28 U.S.C. § 2254. The petitioner raises the same issues raised in his Kan.Stat.Ann. § 60–1507 motion and the issue of whether there was insufficient evidence to sustain his convictions.

## II. STANDARD OF REVIEW

A petitioner is entitled to federal habeas corpus relief on claims adjudicated on the merits in a state court proceeding only if he establishes that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). These standards, imposed by the 1996 Antiterrorism and Effective Death Penalty Act, increase the degree of deference afforded to state court decisions. *Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir.1997).

The Tenth Circuit has applied these standards without need to define them beyond their precise statutory wording. Likewise, the court finds the present case can be decided without a more exacting interpretation of the statute. Under any of the deferential standards announced by the Circuit Courts, petitioner is not entitled to relief on either of his claims. *See Smallwood v. Gibson*, 191 F.3d 1257, 1265, n. 2 (10th Cir.1999) (declining to adopt a specific interpretation of § 2254(d)(1) where result would not be altered under any of the varying standards and noting that the Supreme Court granted *certiorari* to review the Fourth Circuit's interpretation of these standards (*See Williams v.*

*Taylor,* —— U.S. ——, 119 S.Ct. 1355, 143 L.Ed.2d 516 (1999))).

## III. DISCUSSION

### A. Sufficiency of Evidence

■ The petitioner claims there was insufficient evidence for the jury to find him guilty of robbery and criminal deprivation of property. A federal court may grant habeas relief only if it determines that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781. There is a presumption that "the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West,* 505 U.S. 277, 296–97, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992). The federal court does not weigh the evidence, and "must accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Kelly v. Roberts,* 998 F.2d 802, 808 (10th Cir.1993). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Id.* After examining the record with deference to the state court's findings of fact, the court finds that petitioner's claim lacks merit.

■ Robbery is defined as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person." Kan.Stat.Ann. § 21–3426 (1995). When Gerald refused to give petitioner money, he grabbed Gerald's neck and threw him to the floor. Petitioner did not release Gerald until he agreed to think about it. Petitioner continued to threaten Gerald until he gave him the $1,000 check. The evidence, when viewed in the light most favorable to the prosecution, reveals that petitioner took the check from his father under the threat of bodily harm.

Petitioner argues the prosecution did not prove that he took the check from his father. Petitioner focuses on Gerald Zimmer's statement, "I gave him the check." However, Gerald "gave" his son the check because his son was threatening him with bodily harm. Petitioner also argues that there was no taking because Gerald had an opportunity to leave or call the police when he went to his truck to get his checkbook. Petitioner cites no authority to support his argument and the court could find none. When Gerald went to his truck, he was under the threat of bodily harm until the moment he gave the $1,000 check to petitioner.

Petitioner also argues that Gerald's testimony was insufficient to establish guilt beyond a reasonable doubt. First, petitioner claims Gerald's testimony embellished and escalated the events of July 22, 1994, and was inconsistent with his written report. Gerald's testimony is consistent with his oral statement given to Sheriff Dougherty. The petitioner had an opportunity to cross-examine Gerald regarding any inconsistencies. Minor inconsistencies are not sufficient to prevent a rational trier of fact from finding petitioner's guilt beyond a reasonable doubt.

Petitioner next argues reasonable doubt exists because his version of the facts contradicts his father's. The jury, who observed the demeanor of both witnesses and heard the presentation of all the evidence, is in the best position to determine the weight and credibility of testimony. The federal court does not re-weigh the evidence, but only looks to determine if the jury's decision was within the bounds of reason. *Kelly,* 998 F.2d at 808. There was substantial evidence to support a reasonable jury's finding that petitioner was guilty of robbery.

■ Criminal deprivation of property is defined as "obtaining or exerting unauthorized control over property, with intent to

deprive the owner of the temporary use thereof, without the owner's consent." Kan.Stat.Ann. § 21–3705 (1995). Gerald Zimmer told petitioner not to take his keys or his truck. Petitioner ignored his father and said, "Well, I'm going to take it, just watch me." Zimmer picked up the keys, drove off, and did not return the truck to his father. This evidence is sufficient to establish criminal deprivation of property. The fact that Gerald allowed his son to take the vehicle on other occasions both before and after the charged offense does not negate fact that petitioner committed the instant offense.

When viewed in the light most favorable to the prosecution, as required by *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), a reasonable jury could have found guilt beyond a reasonable doubt. The evidence is substantial and sufficient to support the jury's finding that petitioner was guilty of both robbery and criminal deprivation of property.

### B. Issues Not Raised on Direct Appeal

Petitioner presents four issues that he failed to raise on direct appeal: prosecutorial misconduct, two claims of erroneous jury instructions, and ineffective assistance of counsel for failing to raise these issues on direct appeal. The court will discuss the ineffective assistance of counsel claim within the underlying issues of prosecutorial misconduct and erroneous jury instructions.

### 1. Prosecutorial misconduct

Petitioner claims that remarks made by the prosecutor in closing argument prejudiced the jury against him and denied him a fair trial. Defense counsel did not object to any comments made by the prosecutor during closing argument. Appellate counsel failed to raise the issue on direct appeal. Petitioner first raised the issue of prosecutorial misconduct in his § 60–1507

motion. The state court denied relief because petitioner failed to raise the issue of prosecutor misconduct on direct appeal and was therefore procedurally barred from asserting the issue on collateral appeal.

 Federal habeas review of claims defaulted in state court pursuant to an independent and adequate state procedural rule is barred "unless the petitioner can demonstrate cause for his default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[1] *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A state procedural ground is independent if it relies on state law rather than federal law and is adequate if it is regularly followed and applied evenhandedly to all similar claims. *Hickman v. Spears,* 160 F.3d 1269, 1271 (10th Cir.1998) (quoting *English v. Cody,* 146 F.3d 1257, 1259 (10th Cir.1998)). It is well established in Kansas that a § 60–1507 motion can not be used as a substitute for a direct appeal involving mere trial errors or as a substitute for a second appeal. *See Taylor v. State,* 251 Kan. 272, 834 P.2d 1325, 1330 (1992); *Kirk v. State,* 220 Kan. 278, 552 P.2d 633 (1976); *Carmichael v. State,* 18 Kan.App.2d 435, 856 P.2d 934, 939 (1993). Therefore, petitioner is not entitled to relief unless he can show cause for the default and prejudice resulting from the violation of federal law.

 Petitioner claims that his failure to raise the prosecutor misconduct issue on direct appeal was due to ineffective appellate counsel. Ineffective appellate counsel may establish cause for procedural default. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). To establish a claim of ineffective assistance of counsel, the petitioner must show:

---

1. Petitioner argues this court may consider his prosecutor misconduct claim regardless of procedural default because the state court decided the issue on the merits, citing *Ylst. v. Nunnemaker,* 501 U.S. 797, 801–803, 111

S.Ct. 2590, 115 L.Ed.2d 706 (1991). The court disagrees. The state court did not decide the issue of prosecutor misconduct on the merits, but denied relief because petitioner failed to raise the issue on direct appeal.

(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense in that the outcome would have been different but for the deficiency. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To meet the second part of the *Strickland* test, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694., 104 S.Ct. 2052

 Petitioner has failed to show prejudice. In Kansas, "improper remarks made in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and deny him a fair trial." *State v. Baker,* 249 Kan. 431, 819 P.2d 1173, 1184 (1991) (citing *State v. McKessor,* 246 Kan. 1, 785 P.2d 1332, 1340 (1990)). "The prosecutor is entitled to considerable latitude in arguing the case to a jury." *Id.* To determine whether a trial error is harmless or prejudicial, the court must examine the trial record as a whole and not each isolated incident viewed by itself. *State v. Whitaker,* 255 Kan. 118, 872 P.2d 278, 290 (1994).

In his closing argument the prosecutor stated, "You know, for some people, the hardest thing in the world to do would be to take the stand and tell lies after they've been sworn not to, and some people can do it without giving it another thought, and you saw one of those people. It was the last witness last night, the first one this morning (referring to petitioner)." (Tr. 7 at 26–27) It is not disputed that witness credibility was key to the outcome of this case. This case presented the jury with two options: either believe Gerald Zimmer and find Martin Zimmer guilty or believe Martin Zimmer and find him not guilty.

A review of the closing arguments as a whole demonstrate that both the prosecutor and defense counsel argued that the other side was not credible and effectively used the evidence presented to advance their position. Although the prosecutor's comment was improper, the comment was not so egregious in the context of the trial as a whole that it rendered the trial fundamentally unfair. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Robison v. Maynard,* 829 F.2d 1501, 1509 (10th Cir.1987). Nor was the statement so offensive that it warranted reversal under Kansas law. *See Whitaker,* 872 P.2d at 290 (holding prosecutor's statement "Did someone lie? Yeah. He is sitting right there (indicating defendant)" was not so egregious as to warrant a reversal); *State v. Mosley,* 25 Kan.App.2d 519, 965 P.2d 848, 853 (1998) (holding prosecutor's statement "my witnesses were telling the truth" did not warrant reversal). Because petitioner has not shown prejudice, his ineffective assistance of appellate counsel claim must fail.[2]

Petitioner has not shown cause to excuse his failure to raise the issue of prosecutorial misconduct on direct appeal. Nor has petitioner shown that prejudice resulted from the alleged constitutional violation or that it would be a fundamental miscarriage of justice to deny relief. Therefore, petitioner is not entitled to federal habeas relief on his prosecutorial misconduct claim.

### 2. Burden of Proof Instruction

██ Petitioner contends Instruction Number 7, the burden of proof instruction, was erroneous. The court gave the following instruction:

> The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty.

---

**2.** Even if petitioner had established prejudice, the claim of prosecutorial misconduct appears to be subject to the contemporaneous objection rule. *See State v. Bird,* 708 P.2d 946, 961 (Kan.1985) ("reversible error cannot be predicated upon a complaint of misconduct of counsel during argument where no contemporaneous objection is lodged."); *State v. Sexton,* 256 Kan. 344, 886 P.2d 811, 823 (1994); *State v. Baker,* 249 Kan. 431, 819 P.2d 1173, 1184 (1991); *State v. Mosley,* 25 Kan.App.2d 519, 965 P.2d 848, 853 (1998).

You must presume that the defendant is not guilty until you are convinced from the evidence that he is guilty.

The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims made by the State, you must find the defendant not guilty; if you have no reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant guilty.

Petitioner claims that the instruction should have used the term "presumed innocent" rather than "not guilty." Petitioner also contends that the words "claims by the State" was confusing to the jury and relieved the State of its burden of proof, by allowing the jury to find guilt on factors rather than on elements of the offense. The state court found that trial counsel failed to object to the instruction and the instruction was not clearly erroneous.

 "Claims of error in jury instructions in state criminal proceedings are not a basis for relief in habeas corpus unless the instructions were so fundamentally unfair that they denied petitioner a fair trial." *Tyler v. Nelson,* 163 F.3d 1222, 1227 (10th Cir.1999) (citations omitted). "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

 There is no constitutional requirement that an instruction on the presumption of innocence be given in every case. *Kentucky v. Whorton,* 441 U.S. 786, 788–89, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979). There is no Supreme Court precedent mandating the use of the term "innocent" rather than "not guilty." To determine whether an instruction is constitutionally defective, the court must look at the totality of the instructions and the overall fairness of the trial. *Id.* The in-

struction given was clear that petitioner was not guilty until the State proved his guilt beyond a reasonable doubt. The use of the words "not guilty" did not render petitioner's trial fundamentally unfair.

The court also finds that the use of the phrase "claims made by the State" rather than "elements of the crime" did not render petitioner's trial fundamentally unfair. The jury was instructed on the elements of each crime. Before the elements were presented, the instructions read, "To establish this charge, each of the following claims must be proved." The instructions as a whole make it clear that the burden is on the State to prove each claim beyond a reasonable doubt. The use of the phrase "claims made by the state" did not result in a fundamentally unfair trial.

Petitioner also claims he was denied effective assistance of counsel because the issue of erroneous jury instruction was not raised on direct appeal. To establish a claim of ineffective assistance of counsel, the petitioner must show prejudice, that the outcome would have been different but for counsel's deficient performance. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. The instruction given duplicates the burden of proof instruction provided in the Pattern Jury Instructions of Kansas. *See* PIK Crim.3d 52.02. The Kansas Supreme Court has upheld this instruction as properly advising the jury of the presumption of innocence, burden of proof, and reasonable doubt, rejecting petitioner's arguments that the instruction must use the language "presumed innocent" and "elements of the crime". *State v. Clark,* 261 Kan. 460, 931 P.2d 664, 676–77 (1997); *State v. Noriega,* 261 Kan. 440, 932 P.2d 940, 950–51 (1997); *State v. Pierce,* 260 Kan. 859, 927 P.2d 929, 936 (1996).

Petitioner has not shown that the outcome of the case would be different if counsel had raised the issue on direct appeal. Therefore, petitioner's ineffective assistance of counsel claim for failure to raise the issue of erroneous instructions is without merit.

**IS THEREFORE BY THE COURT ORDERED** that the petition for habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1) is denied.