NOT DESIGNATED FOR PUBLICATION

No. 120,532

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BILLY J. BUCKLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed April 3, 2020. Affirmed in part, vacated in part, and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER, J., and BURGESS, S.J.

PER CURIAM: A jury convicted Billy J. Buckley of one count of theft, two counts of forgery, and one count of identity theft. The district court sentenced Buckley to a controlling term of 41 months in prison and 5 months in jail, to be served consecutively. Buckley appeals, arguing: (1) the court erred in calculating his criminal history score; and (2) the court erred in denying his request for substitute counsel.

FACTUAL AND PROCEDURAL BACKGROUND

On September 19, 2017, Larry Chisholm returned to his home in Wichita to find the door forced open. After looking around, Chisholm discovered several items were missing, including his expired driver's license and several checkbooks. He told the responding officer he suspected a former female employee may have been involved in the burglary. Chisholm's neighbors had not seen anything, and the responding officer found no visible fingerprints.

Nine days later, Buckley bought a pizza and some soda from a Casey's General Store in Mulvane. He paid with a check, and the cashier asked to see Buckley's identification. Buckley provided a driver's license, and the cashier recorded the number on the check. The store manager later received a notice that the check did not clear because of insufficient funds. The check Buckley had used was one of Chisholm's stolen checks, and the driver's license number recorded on the check matched the number of Chisholm's expired license.

The State eventually charged Buckley with one count of burglary, one count of theft, two counts of forgery, and one count of identity theft. At trial, a surveillance video of the transaction at Casey's General Store was played. The cashier identified Buckley as the man in the video. She also testified he had written the check. A detective also identified Buckley was the man in the video. The jury acquitted Buckley of burglary but convicted him on all other counts.

Buckley's presentence investigation (PSI) report showed he had a criminal history score of A. His PSI report classified five of his prior convictions as person felonies: four federal bank robbery convictions from 1990 and one federal bank robbery conviction from 1999.

Before sentencing, Buckley filed a motion challenging the classification of his 1990 federal bank robbery convictions as person felonies. He argued that under *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, Syl. ¶ 9, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016), these convictions should have been classified as nonperson felonies because they occurred before Kansas adopted the Kansas Sentencing Guidelines Act (KSGA). The State responded that *Murdock* had been overruled by *Keel*, and under *Keel*, courts compare the elements of the prior conviction to the comparable Kansas offense at the time of the current conviction.

At a hearing on the motion, the State informed the district court it had a certified journal entry for Buckley's 1990 bank robbery convictions, showing he was convicted under 18 U.S.C. § 2113(a) (Supp. 1990). The State argued that federal bank robbery as defined in 18 U.S.C. § 2113(a) was comparable to Kansas robbery, so Buckley's federal bank robbery convictions could be classified as person felonies.

The district court held that in order to classify the prior convictions as person felonies, the 1990 federal bank robbery statute needed to be the same or narrower than the Kansas robbery statute. The court held that while the federal bank robbery statute was limited to banks, this made it narrower than the Kansas robbery statute. The court also noted that the federal bank robbery statute prohibited taking by intimidation or extortion. The court found these were all essentially taking by force which is criminalized by the Kansas robbery statute. The district court denied Buckley's motion and found he had a criminal history score of A.

The court sentenced Buckley to a controlling term of 41 months in prison and 5 months in jail, to be served consecutively. Buckley appeals.

## DID THE DISTRICT COURT ERR IN CALCULATING BUCKLEY'S CRIMINAL HISTORY SCORE?

On appeal, Buckley argues the district court erred in denying his challenge to his criminal history score. He claims his four 1990 federal bank robbery convictions should not be classified as person felonies for the purpose of calculating his criminal history score because the elements of federal bank robbery are broader than the elements of Kansas robbery. If those convictions had not been classified as person felonies, he would have a criminal history score of C. As a result, he argues his sentence is illegal because it is based on an incorrect criminal history score.

*Standard of Review and Relevant Law*

The KSGA requires an offender's prior out-of-state convictions to be classified as either a misdemeanor or felony for calculating the offender's criminal history score. K.S.A. 2018 Supp. 21-6811(e)(2). Out-of-state convictions must also be classified as either person or nonperson offenses. K.S.A. 2018 Supp. 21-6811(e)(3). In determining whether an out-of-state conviction is a person or nonperson crime, "comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to." K.S.A. 2018 Supp. 21-6811(e)(3). For an out-of-state conviction to be comparable to a Kansas crime, "the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018). Because this is a direct appeal, Buckley gets the benefit of any change in the law—in this case the holding in *Wetrich*—while his appeal is pending. See *State v. Murdock*, 309 Kan. 585, 591, 439 P.3d 307 (2019).

In 2019, the Kansas Legislature amended K.S.A. 21-6811. L. 2019, ch. 59, § 13. Under this amendment, it appears federal bank robbery would be a person felony. See K.S.A. 2019 Supp. 21-6811(e)(3)(B)(i)(b). However, the Legislature did not express any

4

intent that the 2019 amendment should apply retroactively. Neither party has argued that the 2019 amendment should apply here.

The federal bank robbery statute, 18 U.S.C. § 2113 has several sections, but both parties have focused their argument on section (a). That section states:

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

"Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny."

Neither party contests federal bank robbery is a felony. The only issue is whether a federal bank robbery conviction should be classified as a person or nonperson felony. To determine this, courts must consider whether federal bank robbery is comparable to a Kansas crime. Both parties use Kansas robbery as the relevant Kansas crime for a comparability analysis. K.S.A. 2018 Supp. 21-5420 defines robbery as "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person."

To determine if an out-state crime is comparable to a Kansas crime, courts must compare the elements of each offense. This is a straightforward process when the crime has a single set of elements. In some cases, though, the relevant statute lists elements in the alternative, thus defining more than one crime. Such statutes are known as divisible

5

statutes. *Mathis v. United States*, 579 U.S. __, 136 S. Ct. 2243, 2249, 195 L. Ed. 2d 604 (2016). When dealing with a divisible statute, courts must first determine which subsection, or set of elements, the defendant was convicted under before comparing those elements with the Kansas statute.

As the State points out, the federal bank robbery statute is divisible. 18 U.S.C. § 2113(a) defines three separate crimes:  (1) bank robbery; (2) bank extortion; and (3) entering a bank intending to commit larceny or another felony. *State v. Lax-Dudley*, No. 119,253, 2019 WL 5849919, at *7 (Kan. App. 2019) (unpublished opinion); see also *United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016) ("Section 2113[a] seems to contain a divisible set of elements . . . taking property from a bank by force and violence, or intimidation, or extortion on one hand and entering a bank intending to commit any felony affecting it . . . on the other."); *United States v. Rinker*, 746 Fed. Appx. 769, 772 (10th Cir. 2018) (unpublished opinion) (holding federal bank robbery statute is divisible). While the record suggests Buckley was convicted under 18 U.S.C. § 2113(a), the district court did not determine which of the three crimes defined in 18 U.S.C. § 2113(a) was the basis for Buckley's conviction. As a result, the classification of Buckley's federal bank robbery convictions as person felonies cannot be determined.

On appeal, Buckley does not address whether the federal bank robbery statute is divisible. He argues only that the federal bank robbery statute is broader than the Kansas robbery statute because (1) the federal bank robbery statute criminalizes attempts; and (2) the federal bank robbery statute criminalizes behavior not included in the Kansas robbery statute. Both arguments are irrelevant until it is determined which of the three statutorily defined crimes Buckley was convicted of.

We vacate the sentence entered and remand the case for said determination after which a proper analysis can be made to determine whether Buckley's are person or nonperson felonies. In making this determination, the district court should apply the

modified categorical approach, under which a district court may examine a limited class of documents to determine which set of elements was the basis for a conviction. *State v. Obregon*, 309 Kan. 1267, 1274, 444 P.3d 331 (2019). Once the correct subsection has been identified, the district court may then compare the elements of that crime with the relevant Kansas crime. The State has the burden to prove which subsection was the basis for Buckley's conviction. 309 Kan. at 1275-76.

DID THE DISTRICT COURT ABUSE ITS DISCRETION
WHEN IT DENIED BUCKLEY'S REQUEST FOR SUBSTITUTE COUNSEL?

Next, Buckley argues the district court abused its discretion when it denied his request for substitute counsel. In February 2018, the district court appointed a public defender as Buckley's counsel. That public defender filed a motion to reduce Buckley's bond, which the court denied. For reasons that are not clear from the record, the district court then appointed M. Steven Wagle as Buckley's counsel in April 2018.

Buckley's trial was originally scheduled for June 25, 2018. The district court continued the trial to August 6, 2018, at Buckley's request. Apparently, the trial did not take place on August 6 because of a scheduling issue.

A couple days later, Buckley filed a pro se "Motion for Ineffective Assistance of Counsel." In the motion, he alleged Wagle had: (1) failed to reply to Buckley's attempts to contact him by phone, mail, and email; (2) failed to file several pretrial motions Buckley had requested; (3) not appeared for trial on August 6; and (4) failed to discuss trial strategy with Buckley.

The district court held a hearing on the motion. The court asked Buckley if he had anything to add to the motion. Buckley told the court he had repeatedly tried to contact Wagle but had been unsuccessful. Wagle had been to visit him in jail only two times.

Buckley had also asked Wagle to file several pretrial motions. Buckley also alleged Wagle had failed to show up for a hearing. Finally, Buckley stated Wagle had not shared discovery or discussed trial strategy with him. Buckley concluded, "I don't feel that he wants—he has any desire to represent me. I don't see where he's—he's puttin' any effort into it."

The district court asked Buckley if he was able to talk about things with Wagle when they met. Buckley responded he did not believe he was. When the court asked what he meant by that, Buckley said he felt Wagle had no desire to help him.

Wagle responded that he had not failed to appear and had been ready for trial on August 6, but the district court had continued the trial because of a conflict. Wagle stated he had given Buckley his discovery, had visited him at least three or four times, and believed he and Buckley communicated well. Wagle also told the court that he was prepared to try the case. He argued it would be unfair to the district court and to Buckley if substitute counsel was appointed, because it would delay the case while that counsel prepared for trial.

The district court applied the justifiable dissatisfaction standard to Buckley's request and found there was no conflict of interest, no irreconcilable conflict, and no complete breakdown of communication between Buckley and Wagle. The court found the two were communicating, though perhaps not as much as Buckley wished. The district court also explained pretrial motions are the province of the attorney. It added that while defendants have the right to make certain decisions, such as whether to have a jury trial, most other decisions are within the province of the attorney. The district court also clarified that Wagle had not failed to appear on August 6. The district court was in contact with the parties about the possibility of a trial that week, but the scheduling did not work out. The district court denied the motion, finding "this attorney/client

8

relationship has not deteriorated to a point where appointed counsel can no longer give effective aid and give a fair presentation or a defense."

After the district court ruled on the motion, Buckley responded, "[H]ow can he be prepared for trial when he don't even know what I want to put on for a defense?" The district court declined to discuss any conversations Buckley may have had with his attorney. It added that the attorney ultimately decides what defense to use at trial.

*Standard of Review and Relevant Law*

A district court's refusal to appoint new counsel is reviewed for an abuse of discretion. A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. Buckley carries the burden to prove the court abused its discretion. *State v. Burnett*, 300 Kan. 419, 449, 329 P.3d 1169 (2014).

While criminal defendants have a right to counsel under the Sixth Amendment to the United States Constitution, they do not have an absolute right to choose their counsel. Likewise, they do not have an absolute right to substitute counsel. Instead, to receive substitute counsel, a defendant must show "'justifiable dissatisfaction'" with his or her appointed counsel. *State v. Pfannenstiel*, 302 Kan. 747, 759, 357 P.3d 877 (2015). This can be done by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown of communication. 302 Kan. at 759-60.

In making his argument, Buckley primarily relies on *State v. Saeger*, 13 Kan. App. 2d 723, Syl. ¶ 2, 779 P.2d 37 (1989), which identified several factors a court should consider in determining if a defendant has shown good cause for the appointment of new counsel. These factors include:  (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict was so great

that there was a complete lack of communication, preventing an adequate defense. 13 Kan. App. 2d 723, Syl. ¶ 2. Our Kansas Supreme Court has declined to follow *Saeger*, instead preferring the justifiable dissatisfaction standard. *State v. Jasper*, 269 Kan. 649, 653-54, 8 P.3d 708 (2000).

As to the justifiable dissatisfaction standard, Buckley argues he demonstrated an irreconcilable conflict. He claims Wagle did not meaningfully involve him in the process of preparing for trial or understanding the theory of defense. Buckley notes that he claimed Wagle had not discussed trial strategy with him and had not filed his requested pretrial motions. Buckley also claims he "perceived that there was a complete breakdown in communication with [Wagle]."

As for Buckley's claim about pretrial motions, the district court found the decision on whether to file motions ultimately rested with Wagle. Buckley concedes this is correct. See, e.g., *Bledsoe v. State*, 283 Kan. 81, 92, 150 P.3d 868 (2007). However, he claims the district court should have asked more questions to determine if Buckley's requested motions were justified.

When a defendant suggests a potential conflict with appointed counsel, the district court should conduct an appropriate inquiry, which "requires fully investigating (1) the basis for the defendant's dissatisfaction with counsel and (2) the facts necessary for determining if that dissatisfaction warrants appointing new counsel." *Pfannenstiel*, 302 Kan. at 761. A district court may conduct an appropriate inquiry by asking a single, open-ended question if the defendant does not suggest circumstances which would require further inquiry. See, e.g., *State v. Wells*, 297 Kan. 741, 755, 305 P.3d 568 (2013) (one open-ended question is sufficient because it gave defendant an opportunity to "suggest a conflict of interest, an irreconcilable disagreement, or an inability to communicate with counsel" and defendant failed to articulate anything that warranted follow up). Failure to

conduct an appropriate inquiry constitutes an abuse of discretion. *Pfannenstiel*, 302 Kan. at 761.

It is questionable whether Buckley's claim that Wagle did not file all Buckley's requested pretrial motions would have given rise to a duty to inquire further. That said, after Buckley told the court he had asked Wagle to file pretrial motions, he added he had asked Wagle to file motions to reduce his bond. Buckley's previous attorney had already filed such a motion, and the district court had denied it. Furthermore, Wagle did file a motion in limine and that motion was granted.

As for Buckley's claim that there was a complete breakdown of communication, Wagle's testimony contradicted him. Wagle told the court he had visited Buckley at least three or four times, and they had communicated well. This conflict in testimony was for the district court to resolve. Presumably, the court resolved it in Wagle's favor. Additionally, Wagle's failure to communicate with Buckley as often as he would like does not amount to a complete breakdown in communication. See *State v. Brown*, 305 Kan. 413, 425, 382 p.3d 852 (2016) (holding "lack of communication between defendant and counsel will not always rise to the level of justifiable dissatisfaction").

Finally, Buckley claims Wagle did not discuss trial strategy with him, but the district court found that defense strategy is the purview of the attorney. A criminal defendant controls three decisions: (1) how to plead; (2) whether to have a jury trial; and (3) whether to testify on their own behalf. All other strategic and tactical decisions are the exclusive province of the attorney after consultation with his or her client. 305 Kan. at 425.

The focus of a justifiable dissatisfaction inquiry is the adequacy of counsel in the adversarial process, not the defendant's relationship with his or her attorney. *Pfannenstiel*, 302 Kan. at 761-62 (quoting *United States v. Baisden*, 713 F.3d 450, 454 [8th Cir. 2013]).

11

"As long as the trial court has a reasonable basis for believing the attorney-client relation has not deteriorated to a point where appointed counsel can no longer give effective aid in the fair representation of a defense, the court is justified in refusing to appoint new counsel." *State v. Bryant*, 285 Kan. 970, 986-87, 179 P.3d 1122 (2008).

Here, the district court had a reasonable basis to believe Buckley and Wagle's relationship had not deteriorated to the point Wagle could no longer provide effective aid and fair representation. Wagle testified that he had met with Buckley on several occasions, had given him discovery, had communicated well with him, and was prepared for trial. Wagle also filed pretrial motions on Buckley's behalf. As a result, the district court did not err in denying Buckley's request and the ruling denying Buckley's request for a change in counsel is affirmed.

Affirmed in part, vacated in part, and remanded with directions.