No. 113,901

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTIAN Y. SINZOGAN,
*Appellant*.

SYLLABUS BY THE COURT

1.

The question of whether the violation of a protective order pursuant to K.S.A. 2015 Supp. 21-5924(a)(6) is a lesser included crime of stalking pursuant to K.S.A. 2015 Supp. 21-5427(a)(3) requires interpretation of the statutes which is a question of law subject to unlimited review.

2.

Proving stalking pursuant to K.S.A. 2015 Supp. 21-5427(a)(3) requires proof the defendant recklessly violated a protective order.

3.

Proving violation of a protective order requires the offense be committed knowingly.

4.

A crime requiring a higher culpable mental state cannot be a lesser included crime of a crime that requires a lower culpable mental state.

1

5.

The culpable mental state for violation of a protective order—knowingly—is higher than the culpable mental state for stalking by violating a protective order—recklessly. Therefore, violation of a protective order is not a lesser included offense of stalking.

6.

Prosecutorial error is now controlled by the standards set out in *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), which are described as error and prejudice.

7.

To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If no error is found, our inquiry stops and we do not need to address the second prong involving prejudice.

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed January 6, 2017. Affirmed.

*Sarah Ellen Johnson*, of Capital Appellate Defender Office, for appellant.

*Daniel D. Gilligan*, assistant county attorney, *Keith E. Schroeder*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., BUSER, J., and WALKER, S.J.

SCHROEDER, J.:  Christian Y. Sinzogan appeals his jury conviction raising two claims of error:  (1) The charge of violating a protective order and stalking are multiplicitous; and (2) the prosecutor committed prosecutorial misconduct during the

rebuttal portion of his closing argument. Sinzogan failed to brief the multiplicity argument and turned it into an argument claiming violation of a protective order is a lesser included offense of stalking. We find violation of a protective order requires a higher culpable mental state—knowingly—than stalking by violating a protective order—recklessly—and, therefore, cannot be a lesser included charge of stalking by violating a protective order. We find the prosecutor's rebuttal argument to the jury does not rise to the level of prosecutorial misconduct. Affirmed.

FACTS

Sinzogan was charged with stalking and violation of a protection from stalking order based on his actions at a Hutchinson mall on October 15, 2013. The victim, H.G., was Sinzogan's ex-wife. Both Sinzogan and H.G. agreed they were in the parking lot; however, their accounts of what occurred differed.

According to H.G., she was in the mall parking lot with a friend when Sinzogan approached them wanting to talk. Although H.G. indicated she did not want to talk, Sinzogan was insistent and would not let her go, at one point grabbing her wrist. He kept telling H.G. he loved her and wanted to be with her, scaring H.G. because he was acting irrationally. After H.G. told Sinzogan she did not love him, he got back in his car and left.

Sinzogan's testimony focused heavily on his marital relationship with the victim. Sinzogan also testified he went to the mall to meet a new friend and recognized H.G.'s vehicle in the parking lot. As a result, he met his friend inside the mall and immediately left.

Sinzogan moved for acquittal, arguing, in part, violation of a protective order and stalking were multiplicitious, but the district court denied his motion.

3

During closing arguments, the prosecutor began his rebuttal by requesting the jury follow the jury instructions. He argued the nature of Sinzogan and H.G.'s relationship was irrelevant to the elements of the crimes charged. The prosecutor then stated:

> "I can appreciate Mr. Sinzogan would like to have you looking over here while this is happening over here, and I appreciate that that's a common tactic of the defense but in this case, Ladies and Gentlemen of the Jury, the only acts that are in the instruction took place October 15th, 2013."

The prosecutor finished his rebuttal by focusing on H.G.'s testimony regarding the events at the mall and the unlikelihood of Sinzogan's version of events. The jury convicted Sinzogan of both counts. The district court sentenced Sinzogan to 6 months' imprisonment for stalking and to 12 months in jail for the violation of the protective order. The district court then suspended his sentence and placed him on 12 months' probation. Sinzogan timely appeals.

ANALYSIS

*Violation of a protective order is not a lesser included offense of stalking*

Sinzogan argues his convictions for violating a protective order and stalking are multiplicitous and one of the convictions must be vacated. Multiplicity occurs when more than one count of a charging document results from a single offense; it violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution because it creates the potential for multiple punishments for the same crime. *State v. Schoonover*, 281 Kan. 453, 463-64, 133 P.3d 48 (2006).

Although Sinzogan frames the issue as a multiplicity issue, he only argues that violation of a protective order is a lesser included offense of stalking. A point raised incidentally in a brief and not argued therein is deemed abandoned. *State v. Sprague,* 303

4

Kan. 418, 425, 362 P.3d 828 (2015). Accordingly, this panel will only address whether, pursuant to K.S.A. 2015 Supp. 21-5109, violation of a protective order is a lesser included offense of stalking. Resolution of this issue requires interpretation of a statute which is a question of law subject to unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Pursuant to K.S.A. 2015 Supp. 21-5109(b), "upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both." A lesser included crime is defined, in relevant part, as "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." K.S.A. 2015 Supp. 21-5109(b)(2).

Violation of a protective order is, in relevant part, knowingly violating "a protection from stalking order issued pursuant to K.S.A. 60-31a05 or 60-31a06, and amendments thereto." K.S.A. 2015 Supp. 21-5924(a)(6).

Stalking is, in relevant part:

> "[A]fter being served with, or otherwise provided notice of, any protective order included in K.S.A. 21-3843, prior to its repeal or K.S.A. 2015 Supp. 21-5924, and amendments thereto, that prohibits contact with a targeted person, recklessly engaging in at least one act listed in subsection (f)(1) that violates the provisions of the order and would cause a reasonable person to fear for such person's safety, or the safety of a member of such person's immediate family and the targeted person is actually placed in such fear." K.S.A. 2015 Supp. 21-5427(a)(3).

Proving stalking pursuant to K.S.A. 2015 Supp. 21-5427(a)(3) requires proof the defendant violated a protective order. Seemingly, violation of a protective order is a lesser included crime of stalking pursuant to K.S.A. 2015 Supp. 21-5427(a)(3). However, the statutes require different culpable mental states. Violation of a protective order

5

requires the offense be committed knowingly. K.S.A. 2015 Supp. 21-5924(a)(6). In contrast, stalking only requires proof the defendant recklessly violated the protective order. K.S.A. 2015 Supp. 21-5427(a)(3). Although it is difficult to conceive how an individual, after being informed of a protective order, could recklessly—rather than knowingly—take an action that violates the protective order, it is not "the function of the appellate courts to delete language from or add language to Kansas statutes." *State v. Ardy*, 295 Kan. 733, 737, 286 P.3d 207 (2012).

Accordingly, the question is whether the culpable mental state is an element of the lesser crime that must be identical to some of the elements of the crime charged. Sinzogan contends the different culpable mental states does not alter the analysis, arguing:

> "In numerous other contexts, it is recognized that a lower-level offense is a lesser-included offense despite differences in the mental state required. Homicide, battery, and assault defendants are all entitled to lesser-included offenses that involve different mental states than the one included in the charged offense. The same should be true here."

However, in each of the contexts cited by Sinzogan, the lesser included offense has a *lower* culpable mental state than the greater offense. For example, the culpable mental state for first-degree murder is "intentionally, and with premeditation"; the culpable mental state for second-degree murder is "intentionally"; and the culpable mental state for voluntary manslaughter is "knowingly." Compare K.S.A. 2015 Supp. 21-5402(a)(1) with K.S.A. 2015 Supp. 21-5403(a)(1) and K.S.A. 2015 Supp. 21-5404(a). Proving a higher culpable mental state necessarily suffices to prove a lower culpable mental state. K.S.A. 2015 Supp. 21-5202(c). As such, proving the greater offense requires proof of all of the elements of a lesser included offense. Here, however, the arguably lesser included offense has a *higher* culpable mental state. See K.S.A. 2015 Supp. 21-5202(b).

Although not directly on point, the Kansas Supreme Court addressed a similar issue in *State v. Frierson*, 298 Kan. 1005, 319 P.3d 515 (2014). Frierson was charged with aggravated robbery and aggravated burglary and was convicted on both counts. On appeal, Frierson argued the district court erred because it denied his request to instruct the jury that battery was a lesser included offense of aggravated robbery. The Kansas Supreme Court held:

"Aggravated robbery requires proof of an intentional act of robbery plus proof of the aggravating element of bodily harm, regardless of whether the bodily harm is intentionally inflicted by the perpetrator. The perpetrator's conduct causing the bodily harm during the course of a robbery may be intentional, reckless, or even negligent." 298 Kan. at 1019.

The *Frierson* court concluded battery was not a lesser included offense of aggravated robbery because battery requires "bodily harm inflicted either intentionally or recklessly," and "there is no intent requirement attached to the infliction of bodily harm in aggravated robbery." 298 Kan. at 1019. In other words, battery was not a lesser included offense of aggravated robbery because there was a higher culpable mental state attached to the element of bodily harm.

Similarly, the culpable mental state for violation of a protective order—knowingly—is higher than the culpable mental state for stalking by violating a protective order—recklessly. Violation of a protective order is not a lesser included offense of stalking. Sinzogan was properly convicted of both offenses.

*No Prosecutorial Error*

Sinzogan also raises a claim of prosecutorial misconduct. Recently, in *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), the Kansas Supreme Court announced a new framework for considering claims based on the behavior of prosecutors. Under this

framework, the appellate court uses a two-step process to evaluate claims of prosecutorial *error*:

> "These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' *State v. Sprague*, 303 Kan. 418, 430, 362 P.3d 828 (2015)." *Sherman*, 305 Kan. at 109.

Prior cases considering factors such as whether the misconduct was gross and flagrant or whether the misconduct showed ill will on the prosecutor's part have been overruled by *Sherman*, 305 Kan. at 92-93, 107. *Sherman* was published after Sinzogan filed his brief wherein he relied on the standard of review in *State v. Fisher*, 304 Kan. 242, 251, 373 P.3d 781 (2016), to support his claim of prosecutorial misconduct. However, it does not matter as Sinzogan is not entitled to relief under either standard.

The State began its rebuttal by saying:

"In this instance I'm encouraging each of the members of the jury to just follow the instructions because in the instructions you will find that marriage is not mentioned. Boyfriend is not mentioned. What their relationship was, or wasn't is not relevant to the crime charged and it's only the elements that the crime charged you're directed to put your attention on and deliberate on and the elements don't say anything about marriage, divorce, when it happened, who paid for it. *I can appreciate Mr. Sinzogan would like to have you looking over here while this is happening over here, and I appreciate that that's a common tactic of the defense but in this case, Ladies and Gentlemen of the Jury, the only acts that are in the instruction took place October 15th, 2013.* Please follow the instructions and focus October 15, 2013." (Emphasis added.)

On appeal, Sinzogan argues the prosecutor committed reversible error by diminishing the role of defense counsel in a criminal trial. Specifically, he argues the emphasized language was "an improper attack on the very role of the defense in a criminal trial, feeding into popular notions that defense attorneys are shady liars who are trying to hide the truth rather than an essential part of the adversarial system our society has designed to settle disputes." The State responds the prosecutor's comments were not outside the wide latitude the prosecutor is allowed when discussing the evidence.

In *State v. Mosley*, 25 Kan. App. 2d 519, 524, 965 P.2d 848 (1998), *overruled on other grounds by State v. Jasper*, 269 Kan. 649, 8 P.3d 708 (2000), the prosecutor told the jury:

"'Ladies and gentlemen of the jury, the title of this case isn't *State vs. William Miller*. It's *State vs. Maurice Mosley*, and don't let the defendant confuse you about who's on trial. And that's his whole game anyway, ladies and gentlemen, is to confuse you about the evidence, okay?'"

Mosley complained of the comment on appeal. The panel found the comment was not so egregious as to require reversal and reminded trial advocates: "Fair comment on trial tactics and the interpretation of evidence is appropriate in argument to the jury. But, care must be exercised not to inappropriately denigrate opposing counsel or inject personal evaluations of the honesty of witnesses." 25 Kan. App. 2d at 525.

In contrast, in *State v. Pham*, 27 Kan. App. 2d 996, 1005-06, 10 P.3d 780 (2000), a panel of this court found the prosecutor committed gross and flagrant misconduct that denied Pham a fair trial when the prosecutor told the jury that defense counsel—who had testified as a witness— "did not 'want the truth'" and "'did not care about the truth.'" The error was compounded when the prosecutor said: "'Boy, if you're going to be looking at the credibility of the witnesses, you might also start with some of these lawyers.'" In addition, the prosecutor commented on the credibility of other witnesses.

Here, the prosecutor's statements align closer with the statements made in *Mosley* than *Pham* and were not outside the wide latitude granted prosecutors when discussing the evidence. In context, the prosecutor was clearly commenting on defense counsel's trial tactics and closing argument, not trying to diminish the role of defense attorneys. The prosecutor never mentioned the defense's tactics again. Although the prosecutor's choice of words was unfortunate, we find no prosecutorial error.

Affirmed.