NOT DESIGNATED FOR PUBLICATION

No. 121,606

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHARLES WYNN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; TIMOTHY P. MCCARTHY, judge. Opinion filed August 27, 2021. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and CLINE, JJ.

PER CURIAM:  Charles Wynn seeks to overturn his criminal convictions by claiming the district court and prosecutor violated his supposed right to a nullifying jury, the prosecutor improperly commented on Wynn and his theory of defense, and the instructions improperly influenced the jury. Since Wynn has no right to a nullifying jury and he has not established error by the prosecutor or the court, we affirm his convictions.

FACTS

After Wynn was arrested for aggravated battery of his girlfriend, C.C., the district court issued a no contact order which prohibited Wynn from having contact with C.C. A few months later, the State filed amended charges against Wynn, which included several counts of aggravated battery, violation of a protective order, and intimidation of a victim. All the charges involved Wynn's interactions with C.C.

At trial, C.C. testified about Wynn's domestic abuse. She said he strangled her, and later punched her in the face, fracturing her orbital bone. Her friend took her to the hospital after Wynn punched her because a cut under her left eye would not stop bleeding. She also testified that Wynn choked her on another occasion. After this last incident, C.C. reported the abuse to the police because she recently learned she was pregnant. She said Wynn told her she should get an abortion, and if she failed to, he would take care of it for her.

After Wynn was arrested, he called C.C. from jail. There were 84 calls between Wynn and C.C. in total, but the State only played 9 of those calls during trial. In some of the calls, C.C. made statements relating to Wynn's abuse, such as "I'm scared of you," and "I want you to not put your fucking hands on me ever again." Wynn admitted at trial that he never denied abusing C.C. during any of the phone calls. In another call, C.C. asked Wynn, "What are they going to do to me if I tell them that I'm not going to come to court?" and Wynn advised her, "Basically the only thing I can say to you is just be unreachable." She responded, "But they know where I live." And in response, he said, "So. Just be unreachable." He told her, "I just want you to know they are going to try two or three times, right?" In a later call, he told her, "You know not to make yourself available and shit."

The jury ultimately found Wynn guilty of one count of aggravated battery, all five counts of violation of a protective order, and both counts of intimidation of a victim.

ANALYSIS

Wynn raises several claims on appeal. First, he contends the right to a jury trial set forth in section 5 of the Kansas Constitution Bill of Rights includes a right to jury nullification. He claims the district court violated this right by failing to sua sponte instruct the jury on its ability to return a verdict contrary to the law and evidence. He also claims the prosecutor violated this right in voir dire when she remarked that the jury does not decide issues of law. Next, he claims the prosecutor erred in closing argument by denigrating defense counsel, inappropriately characterizing Wynn's defense theory, and improperly commenting on Wynn's credibility. Last, he claims the court's use of the term "victim" instead of "witness" in the jury instructions on his charges of intimidation of a victim improperly influenced the jury to find him guilty of the criminal battery charges. We are unpersuaded by Wynn's arguments.

*Wynn has no right to a nullifying jury.*

Wynn raises this argument for the first time on appeal. He neither requested the jury instruction he now claims should have been given, nor did he object to the prosecutor's remarks. Even so, he contends we can consider his argument that his constitutional jury trial right was violated since it satisfies one of the recognized exceptions to the general rule prohibiting consideration of new issues on appeal. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018); *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). These exceptions include the following: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights, and (3) the district court was

3

right for the wrong reason. *State v. Harris*, 311 Kan. 371, 375, 461 P.3d 48 (2020). Since Wynn's argument falls within the first exception, we will exercise our discretion to consider it.

Jury nullification is defined as the jury's "knowing and deliberate rejection of the evidence or refusal to apply the law." *State v. Boothby*, 310 Kan. 619, 632, 448 P.3d 416 (2019). Since a jury's verdict of acquittal in a criminal case is "essentially unimpeachable and irreversible . . . a jury can with impunity acquit a defendant in complete disregard of the applicable legal principles, the evidence, or both, thereby allowing an obviously guilty defendant to walk free." *State v. Stinson*, No. 112,655, 2016 WL 3031216, at *3 (Kan. App. 2016) (unpublished opinion) (Atcheson, J., concurring). Although a jury has the incidental power to nullify, a defendant has no right to call upon the jury to exercise that power. *State v. Patterson*, 311 Kan. 59, 68, 455 P.3d 792 (2020) ("While a jury has '"the raw physical power" to nullify, or disregard, the law,' there is no '"right" to jury nullification.'"); *Stinson*, 2016 WL 3031216, at *3 ("Nullification rests on an unchecked power of the jurors, not a legal right belonging to them or to a defendant."). Indeed, the Kansas Supreme Court has specifically held it is improper to inform the jury of its power to nullify. *State v. Kornelson*, 311 Kan. 711, 722, 466 P.3d 892 (2020) (noting that "it is improper to tell the jury it may nullify"); *State v. Boeschling*, 311 Kan. 124, 129, 458 P.3d 234 (2020) (noting Kansas Supreme Court's "long-stated rule that juries cannot be instructed on nullification"); *Boothby*, 310 Kan. at 630 ("[J]uries have 'the raw physical power' to nullify, or disregard, the law. But . . . we have long held that an instruction telling the jury that it may nullify is legally erroneous.").

This muted treatment of the jury's ability to nullify is warranted by the diverse functions of the court and the jury, long recognized in Kansas:

> "'. . . [T]he jury are the exclusive judges of the facts; but not so with the questions of law that are involved. In those cases it is the duty of the court to instruct the jury and

4

decide for them all questions of law that properly arise in the case; and it is incumbent upon the jury to apply the law so given to the facts of the case, and conform their verdict and decision to the instructions. . . .' (*State v. Verry*, 36 Kan. 416, 419, 13 P. 838, 840 [1887].)" *State v. McClanahan*, 212 Kan. 208, 210, 510 P.2d 153 (1973).

See *Boothby*, 310 Kan. at 630.

Wynn acknowledges the recent Kansas Supreme Court cases addressing jury nullification, but he claims their analysis is flawed. He argues that jury nullification existed in 1859 when Kansas adopted its Constitution and, because section 5 of the Kansas Constitution Bill of Rights preserved the jury trial right as it existed in 1859, Kansas' constitutional jury trial right includes the right to tell the jury of its power to nullify. Even assuming we could depart from established Kansas Supreme Court precedent, Wynn's argument still fails.

Wynn is correct that section 5 preserved the jury trial right as it historically existed at common law when Kansas adopted its Constitution. *State v. Albano*, 313 Kan. 638, 641, 487 P.3d 750 (2021). However, the scope of the jury trial right in section 5 "is limited to those functions traditionally performed by juries." 313 Kan. at 647. And, "in the guilt phase of criminal proceedings issues of fact historically fall within the province of the jury, but '[t]he right to have the jury determine issues of fact is in contrast to the determination of issues of law, which has always been the province of the court.'" 313 Kan. at 647; see also *State v. Love*, 305 Kan. 716, 735, 387 P.3d 820 (2017) (citing Kan. Terr. Stat. 1859, ch. 25, § 274 ["'That issues of law must be tried by the court. . . . Issues of fact arising in action, for the recovery of money, or of specific, real or personal property, shall be tried by a jury.'"]). Wynn cites several cases which recognize a jury's incidental power to nullify (by noting a verdict of acquittal is unappealable), but none of these cases hold that a defendant has the right to ask a jury to nullify. Because determining issues of law was not a function traditionally performed by juries when

Kansas' Constitution was adopted, section 5's jury trial right does not preserve a right to jury nullification.

*The district court did not err in failing to instruct the jury on its power to nullify.*

Wynn argues the district court erred in failing to give the PIK instruction, which tells the jury that it has the right to decide the case based on its conscience and acquit the defendant if it believes justice so requires, citing PIK Crim. 51.03. Since Wynn did not request this instruction at trial, he must establish "clear error" by the district court in failing to give it. *State v. Bolze-Sann*, 302 Kan. 198, 209-10, 352 P.3d 511 (2015).

The first question we must ask is whether the requested instruction was legally and factually appropriate. If not, our analysis ends there. *Bolze-Sann*, 302 Kan. at 210. Wynn cannot carry his burden to establish the district court erred, much less clearly erred, because the Kansas Supreme Court has disapproved the very instruction he now claims should have been given. See *McClanahan*, 212 Kan. at 215-16 ("The so-called 'do what you think is fair' instruction set forth in PIK Criminal 51.03 is disapproved for use in Kansas. . . . The jury must be directed to apply the rules of law to the evidence even though it must do so in the face of public outcry and indignation.") Indeed, the Kansas Supreme Court has "long held that an instruction telling the jury that it may nullify is legally erroneous." *Boothby*, 310 Kan. at 630; see *State v. Appelhanz*, No. 119,178, 2019 WL 1213232, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1063 (2019).

In *State v. Genson*, 59 Kan. App. 2d 190, 217, 481 P.3d 137 (2020), this court addressed Wynn's exact argument—whether the district court clearly erred by failing to give this jury instruction sua sponte—and held that the district court acted properly in not instructing the jury on its power to nullify. Likewise, we do not find the district court erred by not giving a legally inappropriate instruction.

*The prosecutor did not misstate the law in voir dire.*

Although Wynn did not object to the prosecutor's comments during voir dire, we may review claims of prosecutorial error based on a prosecutor's comments during voir dire even without a timely objection. However, the presence or absence of an objection may figure into our analysis of the alleged error. *State v. Butler*, 307 Kan. 831, 864, 416 P.3d 116 (2018).

When reviewing a claim of prosecutorial error, we must first consider whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). In determining whether a particular statement falls outside of the wide latitude given to prosecutors, the court considers the context in which the statement was made, rather than analyzing the statement in isolation. *State v. Thomas*, 307 Kan. 733, 744, 415 P.3d 430 (2018).

Wynn argues the prosecutor's comments in voir dire violated his supposed right to a nullifying jury or constituted reversible prosecutorial error because the prosecutor misstated the law. During voir dire, the prosecutor told the prospective jurors:

> "It is important to follow the law when you are on a jury whether you agree with it or not. There is—everybody is certainly entitled to their opinions on what should be legal or illegal, etc. . . . But *people have opinions about what should be and shouldn't be the law. But on a jury isn't the place to adjudicate those concerns.*
>
> "It is the legislature that makes laws. I don't make the laws. I'm just charged with doing this and enforcing them. That is it. *So that is not the jury's place. Can everybody agree with me that it isn't the jury's job to decide issues of law? Okay. Good deal. I don't see any hands.*" (Emphases added.)

7

As explained above, Wynn has no right to a nullifying jury, so we need only consider whether the prosecutor misstated the law. *Patterson*, 311 Kan. at 70. She did not.

The Kansas Supreme Court has found that it is not an error—but rather, legally correct—to tell the jury to follow the law, as that "'is an accurate—and bedrock—statement of law that mirrors the juror's oath; upholds the role of judge and jury; and most importantly, protects the accused.'" *Patterson*, 311 Kan. at 69. See *Boothby*, 310 Kan. at 631-32 (finding no error in instructing jury that its "verdict must be founded entirely upon the evidence admitted and the law as given in [the] instructions"); see also *Patterson*, 311 Kan. at 69-71 (finding no error in prosecutor's comments during voir dire that jury had an "'obligation to follow the law'" and could not "'debate'" the law, as it was not a misstatement of law to tell the jury to follow the law as given in the instructions); *Boeschling*, 311 Kan. at 128-29 (finding no error in judge answering jury's question about whether it could apply nullification by stating: "'You took the oath as jurors at the start of the case to follow the law in the case that you were instructed by the case.'").

The comments made here are analogous to those at issue in *Patterson*, 311 Kan. at 69-71. In *Patterson*, the defendant argued the prosecutor misstated the law, thus committing prosecutorial error, by telling the jury they had an obligation to follow the law and that "'at the end of the trial you will get a packet of jury instructions and that is the law in the case. You don't get to go back and debate that.'" 311 Kan. at 69-71. The Kansas Supreme Court held such comments were not prosecutorial error because at most, the prosecutor's comments told the jury to follow the law as given in the instructions, and it is not a misstatement of the law to tell the jury to follow the law. 311 Kan. at 70-71.

Wynn incorrectly tries to distinguish *Patterson* by arguing there, the prosecutor only told the jury it had a duty to follow the law, and did not, as the prosecutor did here, tell the jury it could not question the law. This argument mischaracterizes the comments

8

in *Patterson* since the prosecutor there also conveyed to the jury that it could not question the law's fairness:

> "'[The Prosecutor]: Okay. The *obligation to follow the law*, that is a benefit we have in the United States is that we can sit and we can debate about the fairness of laws . . . and there is no consequences.
>
> . . . .
>
> "'[The Prosecutor]: Okay. So we don't have that luxury as a juror when it comes to jury instructions. *And what that means is at the end of the trial you will get a packet of jury instructions and that is the law in the case. You don't get to go back and debate that.*'" (Emphases added.) *Patterson*, 311 Kan. at 70.

Wynn overstates the prosecutor's comments when he claims she told the jurors "they must return a guilty verdict in spite of their conscience." As explained above, it is not a misstatement of the law or misleading to tell the jury it must follow the law and that a jury's place is not to decide the law. The prosecutor did not err in her voir dire comments.

*The prosecutor did not err in closing argument.*

Wynn also alleges five instances of prosecutorial error based on statements the prosecutor made during her closing argument. Although Wynn did not object to any of these statements at trial, we may review a prosecutor's comments made during closing argument for prosecutorial error absent a timely objection. *Butler*, 307 Kan. at 864. We review the prosecutor's closing argument the same way we review her voir dire. *Sherman*, 305 Kan. at 109.

Again, when determining whether a prosecutor's comment constitutes prosecutorial error, we consider the comment in context, not in isolation. *Butler*, 307 Kan. at 865. In general, a prosecutor has wide latitude to craft arguments and draw

9

reasonable inferences from the evidence, but the prosecutor cannot comment on facts outside of evidence. *State v. Hachmeister*, 311 Kan. 504, 514, 464 P.3d 947 (2020). Any argument by the prosecutor must be an accurate reflection of the evidence, state the law accurately, and cannot be "'intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law.'" 311 Kan. at 514. Additionally, a prosecutor may not give the jury the prosecutor's personal opinion because such a comment would equate to unsworn, unchecked testimony that is not commentary on the evidence of the case. *State v. Bodine*, 313 Kan. 378, 410, 486 P.3d 551 (2021).

A prosecutor's "'[f]air comment on trial tactics and the interpretation of evidence is allowed, so long as care is taken not to "inappropriately denigrate opposing counsel or inject personal evaluations of the honesty of witnesses."'" *Butler*, 307 Kan. at 865, 868 (finding prosecutor's use of word "'ridiculous'" to comment on believability of defense's theory was not error, as it did not disparage defense counsel); see *State v. Knox*, 301 Kan. 671, 684, 347 P.3d 656 (2015) (finding prosecutor's statement that it was defense counsel's job to "'make [the witnesses] look like liars'" was misconduct because it disparaged opposing counsel); *State v. Sinzogan*, 53 Kan. App. 2d 324, 330-31, 388 P.3d 176 (2017) (finding prosecutor's statement during closing argument: "'I can appreciate [the defendant] would like to have you looking over here while this is happening over here, and I appreciate that that's a common tactic of the defense'" was not error because it amounted to comment on defense counsel's trial tactics, which was within wide latitude granted prosecutors when discussing the evidence).

Wynn first alleges the prosecutor erred in closing by arguing as follows:

"[Defense counsel] and [Wynn] really, really want you to not like [C.C.] in this case, don't they? It is pretty clear. Because we have got in that she had an abortion previously before this, before the abuse started. She was—gasp—married and separated

10

from somebody else when she started having a relationship with the defendant. She uses bad language. She goes to bars. This is clearly the sort of person who—what's the implication of all that—you shouldn't like her or who deserves this. I am very unclear as to what they are after.

"But I didn't pick [C.C.]. The State doesn't pick victims in these cases. You know who did pick [C.C.]? [Wynn]. [Wynn] picked [C.C.] to be his victim. [Wynn] is the one who abused her. She can use all the bad language she wants to, go to all the bars she wants to. Regardless of moral positions or religious positions that we may personally have about abortions, she had one. And that doesn't mean she deserves to get abused. It doesn't mean she deserves to have a bone in her face broken. It doesn't mean that she deserves to have a cut under her eye, a scar under there that she will live with for the rest of her life.

"It doesn't mean any of that. It just means [Wynn] felt free to do all of those things. Because [C.C.] isn't as good as him. [C.C.] does all these things so she deserves it. That is the implication there."

Wynn claims the prosecutor mischaracterized defense counsel's closing argument and denigrated defense counsel by telling the jury Wynn and his counsel wanted the jury "to not like" C.C. and by asserting that they brought up certain negative evidence about C.C. to imply that C.C. deserved to be abused. Wynn's argument fails because we view the remarks as "'[f]air comment on trial tactics and the interpretation of evidence.'" *Butler*, 307 Kan. at 865. We do not read the comments to insult or denigrate defense counsel.

As noted above, a prosecutor has wide latitude to craft arguments based on reasonable inferences from the evidence. The remarks at issue essentially commented on what the prosecutor inferred to be defense counsel's trial tactics. Defense counsel elicited testimony from C.C., Wynn, and the police officer to whom C.C. had reported Wynn's abuse about all these issues. The prosecutor's comments on defense counsel's trial tactics were reasonable inferences from the evidence defense counsel elicited. As in *State v.*

11

*Maestas*, 298 Kan. 765, 778, 316 P.3d 724 (2014), while the comments may be "speculative," they are not improper based on the facts presented at trial.

The prosecutor's comments did not go as far as those in *State v. Dubray*, 289 Neb. 208, 226-28, 854 N.W.2d 584 (2014), which Wynn cites in support of his argument. In *Dubray*, a murder case, the Nebraska Supreme Court held a prosecutor "crossed the line when he characterized defense counsel as 'walking on the graves of [the two murder victims]' and arguing that the victims 'deserved to die.'" 289 Neb. at 228. That court found "[t]he latter statement was not a fair characterization of the defense theory, and the former statement amounted to a personal opinion that defense counsel was defiling the victims through misleading and deceptive arguments." 289 Neb. at 228. The statements were found to be prosecutorial misconduct, but the Nebraska court did not find they deprived the defendant of a fair trial. We do not agree with Wynn that the prosecutor's statements here are inflammatory and emotionally charged like the prosecutor's statements in *Dubray*.

Wynn next argues that the prosecutor erred by mischaracterizing defense counsel's closing argument about the State's admission of only 9 of the 84 jailhouse calls between Wynn and C.C. In closing, defense counsel argued there was no investigation and, instead, the State's case depended on only a few of the calls between Wynn and C.C. Then defense counsel stated:

> "One of the jury's instructions is you cannot—don't pay attention to the redacted information. So what that means is don't ask why. There is certain reasons we redact information. What you can pay attention to is evidence. You can pay attention to how many phone calls there were between the two of them, yet the prosecutor wants you to build a cycle of how he treated her based on a few handful of the phone calls that are picked for this—to prove these cases."

In rebuttal closing, the prosecutor said:

12

"I also would pose it to you while [*defense counsel*] *wants you to think that for some reason on these redacted calls there is some sort of magical innocence call that will show you proof that* [*Wynn*] *didn't do any of those things*, [defense counsel] could have played any of those calls and didn't." (Emphasis added.)

Wynn complains these remarks by the prosecutor inaccurately described defense counsel's argument, mocked Wynn's actual defense, and distracted the jury from the evidence. Again, we do not find these remarks an unfair characterization of defense counsel's argument. The prosecutor's inference that defense counsel implied the prosecutor redacted specific calls because those calls harmed the State's case (i.e., they could help prove his innocence) was reasonable. And we find the phrase "magical innocence call," in context, to be within the latitude afforded prosecutors, which includes the ability to use "colorful language" when arguing the State's case. *Butler*, 307 Kan. at 865; see also *Maestas*, 298 Kan. at 777-78 (finding prosecutor's statement—that he wonders whether, as the defendant stood above his mother, stabbing her on the bed and floor after she screamed for him to stop, it was a nightmare of hers that was coming true or something that the defendant had been dreaming of—equated to a use of colorful language that was within the prosecutor's wide latitude to craft arguments based on the evidence, noting: "We view the comment as being a bit nonsensical and speculative, but not improper based on the facts," as the "victim was asleep in bed when the attack commenced.").

Wynn also argues the prosecutor improperly commented on Wynn's credibility in closing argument by telling the jury that Wynn's explanation for his failure to deny the abuse allegations while on the phone with C.C. (because he was worried about jailhouse snitches) made "zero sense" and was "baffling." The specific statements Wynn challenges are the italicized portions of the following quote:

"The defense of—[Wynn] on these jail phone calls never denies. Every single time [C.C.] says I am scared of you. You hurt me. I don't want you to put your hands on

13

me again. You have got to stop doing this. [*Wynn's*] *defense of that was he was afraid of jailhouse snitches and that is why he never denied it makes absolute*[*ly*] *no, zero, sense.* I mean, none. It is *baffling how you could possibly ever think that denying that you are guilty of something would somehow cause another inmate to snitch on you.*

"*What would the inmate say? What would the snitch say? Oh, he said he didn't do it? Oh, well, that makes great evidence. We'll sign you up as a witness right away. He said he didn't do it.*

"[Wynn] never said he didn't do it because he knows he did. He knows he is guilty of these things. He knows he did put his hands on her. He knows she has a reason to be scared of him because he promises to not do it again in the jail phone calls. *The defense would have you denoon* [*sic*] *the evidence of your eyes and ears in this case*."

It is true that in general, a prosecutor may not offer a jury the prosecutor's personal opinion on the credibility of a witness because such a comment equates to unsworn, unchecked testimony, not commentary on the evidence of the case. The determination of a witness' truthfulness is for the jury. *Butler*, 307 Kan. at 865. That said, the prosecutor did not offer her opinion of Wynn's credibility. Instead, she fairly commented on the credibility of the defense theory.

This case is much like the circumstances in *Butler*, 307 Kan. at 862-68, where the Kansas Supreme Court found no prosecutorial error. In *Butler*, the prosecutor referred to the defendant's theory of the case as ridiculous in the rebuttal portion of closing arguments. 307 Kan. at 862, 864. The court held the use of the word ridiculous did not constitute error because it was a fair comment on the believability of the defendant's theory of the case, nor did it rise to the level of claiming the defendant was a liar (i.e., it was not a personal opinion on the witness' credibility that would constitute error). 307 Kan. at 868.

Here, the prosecutor was similarly commenting on the believability of Wynn's defense. Prosecutors are afforded considerable latitude in commenting on the weakness

14

of a defense. See *State v. Blansett*, 309 Kan. 401, 414, 435 P.3d 1136 (2019). The prosecutor did not err here.

For Wynn's final claim of prosecutorial error, he argues the prosecutor erred at four points during her closing argument by improperly expressing her personal opinion that Wynn was guilty.

It is improper for a prosecutor to state a personal opinion about a defendant's ultimate guilt or innocence, but a prosecutor may argue that the evidence establishes guilt. *State v. De La Torre*, 300 Kan. 591, 612, 331 P.3d 815 (2014). When a prosecutor's comment on the defendant's guilt is in the context of discussing the evidence that pointed toward the defendant's guilt—either introducing or concluding a discussion of the evidence indicating guilt—such comments are best characterized as "directional" and are not error. See *State v. Mann*, 274 Kan. 670, 688-89, 56 P.3d 212 (2002) (holding prosecutor's comment was not improper opinion on defendant's guilt, but "directional," as it occurred near beginning of prosecutor's closing argument and had purpose of serving as opening for prosecutor's upcoming summation of evidence pointing toward defendant's guilt); see also *State v. Dean*, 298 Kan. 1023, 1036-37, 324 P.3d 1023 (2014) (holding prosecutor's repeated use of word "guilty" in statement concluding his rebuttal closing argument—"The relevant evidence points in one direction, and that direction is right there, and it's guilty. Guilty, guilty, guilty, guilty"—not error because it was conclusion to be drawn from evidence). As discussed above, in determining whether a prosecutor's comment constitutes prosecutorial error, the comments must be considered in context, not in isolation. *Butler*, 307 Kan. at 865.

Wynn first challenges the following closing statements:

> "What doesn't happen every day is somebody punches their partner, their spouse, their girlfriend, their boyfriend, whatever. Punches them so hard that it breaks a bone in

their face and sends them to the hospital. And then leaves. Doesn't see if she is okay. Doesn't help pick her up off the floor. Doesn't help clean it up. He just leaves. *Because I guarantee you in the defendant's mind, this is* [*C.C.'s*] *fault*." (Emphasis added.)

Right before these remarks, the prosecutor discussed the following evidence: C.C.'s testimony that Wynn punched her in the face and left the house after the incident; her friend picked her up off of the floor, cleaned up the blood, and took her to the hospital; and she broke a bone in her face as a result of Wynn's punch. The italicized statement here was a conclusion the prosecutor drew from the evidence she had just discussed. She did not personally comment on the credibility of Wynn's testimony, nor did she give her opinion on Wynn's guilt. This comment is not error.

Wynn next challenges these statements:

"*He knew why he was arrested because he knew he was guilty. He knew he had done these things.* She told the police everything." (Emphasis added.)

Again, before making these statements, the prosecutor referenced the following evidence: Wynn admitted he never denied abusing C.C. during his phone calls with her; when he was arrested, he testified he thought it was for the child support warrant; and in the first call he made after his arrest, he discussed C.C. "running her mouth." We find the prosecutor's statements here to be a reasonable conclusion based on evidence—the conclusion being that Wynn knew the reason he was arrested (abusing C.C.), rather than the reason he provided (the child support warrant). The prosecutor's reference to Wynn's testimony about not denying the abuse during the calls could suggest Wynn "knew why he was arrested because he knew he was guilty." It is reasonable to infer from Wynn's statement in his first phone call from jail, in which he told someone C.C. was "running her mouth," that he meant she told police about the abuse. Thus, these statements were similarly conclusory, based on evidence indicating guilt, and not in error.

16

Wynn also challenges these statements:

> "[*Wynn*] *never said he didn't do it because he knows he did. He knows he is guilty of these things. He knows he did put his hands on her.* He knows she has a reason to be scared of him because he promises to not do it again in the jail phone calls." (Emphasis added.)

Likewise, these statements immediately follow the prosecutor's discussion of evidence suggesting Wynn's guilt, including various statements C.C. made to Wynn during the calls played at trial, including: "I'm scared of you," and "I want you to not put your fucking hands on me ever again"; and Wynn's testimony confirming that he never denied abusing her during the phone calls. The prosecutor's statements, asserting that Wynn "knows he did it," "knows he is guilty of these things," and "knows he did put his hands on her" are conclusions of guilt the prosecutor made based on the preceding evidence. They are not improper personal opinions on his guilt and therefore not prosecutorial error.

The last statements from the prosecutor's closing argument challenged by Wynn are the following:

> "Listen to those jail phone calls again, one more time. You will see a very clear picture of what this defendant is, and *what he is is* [*C.C.*]*'s abuser. And he is guilty of all of these charges.* I would ask that you find him so." (Emphasis added.)

Just as in *Dean*, 298 Kan. at 1036-37, this statement concluded the prosecutor's rebuttal closing argument. It did not constitute prosecutorial error because it was a final conclusion drawn from evidence the prosecutor discussed that demonstrated guilt. Wynn asserts that the statements constitute error because they are like those in *State v. Peppers*, 294 Kan. 377, 399-400, 276 P.3d 148 (2012). Yet *Peppers* is distinguishable because there, the discussion of evidence suggesting guilt did not precede the suggestion of guilt.

17

Since we find the prosecutor's comments in closing do not fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial, Wynn's individual claims of error fail. *Sherman*, 305 Kan. at 109. Moreover, since we find no prosecutorial errors, his claim of cumulative error similarly fails. *Butler*, 307 Kan. at 868 ("'[I]f there is no error or only a single error, cumulative error does not supply a basis for reversal.'").

*Wynn is precluded from arguing the jury instructions improperly influenced the jury since he invited the error about which he complains.*

Wynn argues the district court erred in using the term victim rather than witness in the jury instructions for counts 9 and 10, which were the counts charging Wynn with the crime of "intimidation of a witness or victim," in violation of K.S.A. 2020 Supp. 21-5909. He claims the use of the term victim in these instructions improperly influenced the jury to find Wynn guilty of at least one battery charge, since it amounted to the court telling the jury there was a victim, and that victim had to be C.C.

The problem with Wynn's argument is he proposed the very instructions about which he now complains. Thus, as the State correctly notes, the invited error doctrine excludes his claim. The invited error doctrine dictates that "'a litigant who invites and leads a trial court into error will not be heard on appeal to complain of that action.'" *State v. Fleming*, 308 Kan. 689, 696, 423 P.3d 506 (2018). Whether the invited error doctrine applies is a question of law over which this court exercises unlimited review. *State v. Cottrell*, 310 Kan. 150, 161, 445 P.3d 1132 (2019).

Our Supreme Court has stated that when the defendant alleges a jury instruction error based on an instruction the district court gave that was the same as the instruction the defendant proposed, and the defendant failed to object to the instruction, the invited

18

error doctrine will be applied if the defendant could have identified the alleged error before he proposed the instruction. See *Fleming*, 308 Kan. at 701-03, 707 (finding invited error doctrine applied, precluding review, when defense proposed instruction using pattern language rather than proposing modification, district court gave same instruction defense proposed, defense failed to object or request a modification at any point, and defense could have assessed the propriety of the instruction he proposed before trial).

The State and Wynn proposed the same instructions the district court gave the jury for counts 9 and 10. Wynn admits he did not object to the use of the word victim in these instructions. While he now argues C.C. cannot be considered a victim because that definition applies only when a prior crime against the individual at issue has already been proven, and here, the crimes against C.C. were only alleged, he could have identified this issue before proposing his instructions to the court or before the court gave the final instructions to the jury. We find Wynn invited the error about which he now complains and has thus waived this issue.

In sum, we find no error warranting reversal of Wynn's convictions.

Affirmed.

* * *

ATCHESON, J., concurring: I join my colleagues in concluding Defendant Charles Wynn has offered no grounds for reversing the guilty verdicts a jury sitting in Johnson County District Court returned against him on multiple charges. For the most part, I am comfortable with the reasoning disposing of each issue he has raised on appeal, save for the challenge to the prosecutor's examination of the prospective jurors at the start of the trial. I am not persuaded that the aggressive and expansive discussion of the jurors' obligation to follow the law was free of "prosecutorial error," as the term has been

19

defined in *State v. Sherman*, 305 Kan. 88, 104-05, 109, 378 P.3d 1060 (2016). But prosecutorial error must deprive a criminal defendant of a fair trial to warrant reversal of a conviction. 305 Kan. at 98-99, 109. Wynn's claim for relief falters there.

Although criminal juries have the unchecked power to return a not guilty verdict contrary to the evidence or the law, that power entails no legal right accruing either to the jurors themselves or to the defendant. See *State v. Stinson*, No. 112,655, 2016 WL 3031216, at *3 (Kan. App. 2016) (unpublished opinion) (Atcheson, J., concurring). So even if the prosecutor here impermissibly dissuaded the jurors from contemplating nullification verdicts during their deliberations, any error would not have deprived Wynn of a fair trial precisely because he had no protected right to jury nullification in the first place. Accordingly, his convictions cannot be undermined for that reason. If there were prosecutorial error, the remedy would lie in an external sanction visited on the prosecutor and not in reversing guilty verdicts supported in the law and the evidence. *Sherman*, 305 Kan. at 114-15.

As I have previously suggested, lawyers may inform prospective jurors they have "a duty" to follow the law if chosen to serve and may ask them about their willingness to abide by the district court's instructions outlining the governing law even if they think the law is or should be different. *Stinson*, 2016 WL 3031216, at *4. But the lawyers' examination should avoid both the term "jury nullification" and discussion of the concept without an attached label. Here, the prosecutor injected the idea that the jury room "isn't the place to adjudicate those concerns" about the wisdom of the law or the empirical justness of convicting the defendant—comments going well beyond a neutral inquiry about the jurors' willingness to follow the law. The prosecutor invoked a false legal construct, since jurors in a criminal case can render a verdict contrary to the law to satisfy their own sense of right and wrong. A defense lawyer, of course, would be remiss in suggesting to potential jurors that they have the authority to decide the fate of the accused as they alone see fit. Silent neutrality about jury nullification should be a two-way street.

I recognize that in *State v. Patterson*, 311 Kan. 59, 70-71, 455 P.3d 792 (2020), the Kansas Supreme Court seems to have tacitly suggested silent neutrality applies only to those who might prefer jury nullification in a given case, while those in the opposite camp may actively, if implicitly, campaign against it. I defer further discussion of the *Patterson* dichotomy for another time.